791 P.2d 1037

**In the Matter of Morton RIVKIND, a member of the State Bar of Arizona, Respondent.**

**No. SB–88–0043–D.**

Supreme Court of Arizona.

May 10, 1990.

Morton Rivkind, Phoenix, pro se.

State Bar of Arizona by Harriet L. Turney, Chief Bar Counsel, Yigael M. Cohen, Staff Bar Counsel, Phoenix, for State Bar of Arizona.

## OPINION

MOELLER, Justice.

### JURISDICTION

In separate criminal proceedings, respondent lawyer Morton Rivkind was charged with and tried for the offense of possession of cocaine. He was convicted of and punished for the lesser-included offense of attempted possession of cocaine. The question presented in this separate disciplinary proceeding is what additional sanction should be imposed upon him in his capacity as a member of the State Bar of Arizona.

The Arizona State Bar Hearing Committee (Committee) found that Morton Rivkind (respondent) violated E.R. 8.4(b) and Rule 57(a), Ariz.R.Sup.Ct., 17A A.R.S., and recommended that he be suspended from the State Bar of Arizona for a period of twenty-two months, commencing on November 6, 1986, and be placed on probation for one year following his suspension.

The Disciplinary Commission of the Supreme Court (Commission) recommended that the suspension be for a period of three years, commencing November 6, 1986. Both respondent and counsel for the State Bar contend that a three-year suspension is excessive. We have jurisdiction pursuant to Rule 53(e), Ariz.R.Sup.Ct., 17A A.R.S.

### PROCEDURE AND FACTS

On January 8, 1986, respondent was stopped for a traffic violation. After being observed trying to hide something, he was searched, and Phoenix police officers found .19 milligrams of cocaine on his person. Respondent was charged with possession of cocaine.

Respondent waived his right to a jury and a bench trial was conducted on a stipulated set of facts. He was found guilty of attempted possession of cocaine, a narcotic drug, a class five felony. On September 19, 1986, the trial court suspended sentence and placed respondent on three years probation. Additionally, pursuant to A.R.S. § 13–603(G), the trial judge revoked respondent's license to practice law, and respondent complied with the order by ceas-

ing all legal practice on that date. The trial judge noted that, although respondent's conviction was the end result of "a five-year or so struggle" with cocaine, nothing in the record showed that his professional performance had been adversely affected.

Based on respondent's conviction, we placed him on interim suspension pursuant to Ariz.R.Sup.Ct. 57(b) on November 6, 1986. Shortly thereafter, respondent, with the approval of the Maricopa County Adult Probation Department, relocated to Florida. He supported himself and his family through various unskilled labor jobs. Eventually, he found employment as a law clerk.

While respondent was in Florida, bar disciplinary proceedings commenced. After an *in absentia* hearing, the Hearing Committee recommended that respondent be suspended from the practice of law for three years. However, on January 11, 1988, the Disciplinary Commission found that the State Bar failed to properly notify respondent of the commencement of such proceedings. Because respondent had been denied due process due to incomplete service of process, the Commission remanded the case to the Hearing Committee for new proceedings.

The Committee conducted a hearing on April 15, 1988, at which several of respondent's colleagues and his probation officer testified. The Committee issued its report on May 26, 1988. The Committee was impressed with respondent's rehabilitation and his efforts at restoring his life to normalcy. It noted that respondent had complied in all respects with the probation imposed upon him in the criminal case. It found that respondent had been very cooperative and had expressed sincere contrition and regret for his past behavior. Significantly, the Committee found that respondent was no longer involved with drugs or alcohol and that he had voluntarily submitted to several urine analyses, all

of which were negative. As a result of its findings, the Committee recommended that respondent be "readmitted" to the practice of law, subject to a one-year probationary period.[1]

After oral argument, the Commission issued its report on July 9, 1988, accepting most of the Committee's factual determinations. Although the Commission, like the Committee, was impressed with respondent's recovery program, it recommended that the suspension be for three years, rather than for two, retroactive to November 6, 1986.

In the criminal case, respondent was granted early termination of his probation on July 14, 1988. On September 6, 1988, his civil rights were restored and his felony conviction was vacated. As a result, this court terminated his interim suspension on September 15, 1988, and reinstated respondent to active membership in the State Bar of Arizona.

This case is in a somewhat unusual posture, because the State Bar joins respondent in urging this court to adopt the Committee's recommendation of a two-year suspension, rather than the three years recommended by the Commission. Both the State Bar and respondent contend that the Committee's recommendation better serves the purposes of bar discipline. With certain modifications, we agree and adopt the Committee's recommendation.

## ISSUE PRESENTED

We must decide the appropriate sanction to impose under the facts and circumstances of this case.

## DISCUSSION

 In disciplinary proceedings, we act as an independent "trier of both fact and law in the exercise of our supervisory responsibility over the State Bar." *Matter of Neville*, 147 Ariz. 106, 108, 708 P.2d

---

1. Although the Committee worded its recommendation in terms of "readmission" or "reinstatement," the Committee evidently intended to suspend him for a twenty-two-month period. It then intended to credit him for the two years he

spent out of practice (September 19, 1986 to September 15, 1988), which would effectively reinstate him subject to the one-year probationary period.

1297, 1299 (1985). We do, however, give deference and serious consideration to the recommendations of the Committee and Commission. *Matter of Pappas,* 159 Ariz. 516, 518, 768 P.2d 1161, 1163 (1988). Additionally, this court gives great weight to the factual findings of the Committee, particularly when questions of credibility are involved. *Matter of Hoover,* 155 Ariz. 192, 196, 745 P.2d 939, 943 (1987); *Matter of Zang,* 154 Ariz. 134, 136, 741 P.2d 267, 269 (1987), *cert. denied,* 484 U.S. 1067, 108 S.Ct. 1030, 98 L.Ed.2d 994 (1988).

■ Rule 57(a)(3), Ariz.R.Sup.Ct., 17A A.R.S. provides that a "lawyer shall be disciplined as the facts warrant upon conviction ... of any felony." Under that rule, proof of conviction is conclusive evidence of guilt of the underlying criminal offense. The fact that the conviction was vacated pursuant to A.R.S. § 13–907 does not affect the conclusiveness of guilt because the order to vacate is unrelated to the merits of the conviction. *See Matter of Couser,* 122 Ariz. 500, 596 P.2d 26 (1979) (expungement of conviction upon fulfilling terms of probation is not a defense to disciplinary proceedings). Therefore, the sole issue before us is the extent of discipline to be imposed.

■ Our responsibility to determine the appropriate discipline in a case such as this imposes a concomitant responsibility to pay special care to the purposes to be served by such discipline. The object of disciplinary proceedings is not to punish the lawyer, but to protect the public and deter similar conduct by other lawyers. "Consequently, in determining the appropriate sanction to be imposed, we should focus on such considerations as the maintenance of the integrity of the profession in the eyes of the public, the protection of the public from unethical or incompetent lawyers, and the deterrence of other lawyers from engaging in unprofessional conduct." *Matter of Murray,* 159 Ariz. 280, 282, 767 P.2d 1, 3 (1988). On occasion, it is also appropriate for us to assist, if we can, in

rehabilitating an errant attorney. *Hoover,* 155 Ariz. at 197, 745 P.2d at 944. This goal is especially appropriate when, as here, an attorney has taken very considerable and substantial steps. in rehabilitating and assisting himself.

In other cases, we have considered the American Bar Association's Standards for Imposing Lawyer Sanctions [hereinafter "ABA *Standards* "] as a suitable guideline in imposing discipline. *See, e.g., Matter of Spear,* 160 Ariz. 545, 555, 774 P.2d 1335, 1345 (1989) (standards provide a useful framework for guiding our sanction decision). The ABA *Standards* suggest that we consider (a) the duty violated; (b) respondent's mental state; (c) the injury to the client; and (d) any aggravating or mitigating factors. ABA *Standards* § 3.0.

### Duty Violated, Mental State and Injury to Client

■ Respondent has violated Ariz.R. Sup.Ct. 42 (E.R. 8.4(b)) which provides, "It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Respondent broke his oath to support and uphold the laws of the state. Without doubt, respondent's conviction places in question his ability to respect and uphold the law. *See Matter of Kinnear,* 105 N.J. 391, 394–396, 522 A.2d 414, 416 (1987). Obedience to the law by an attorney is crucially important. *Matter of Preston,* 616 P.2d 1, 5 (Alaska 1980); *In re Scarnavack,* 108 Ill.2d 456, 458, 92 Ill.Dec. 446, 447, 485 N.E.2d 1, 2 (1985).

■ Respondent's drug experimentation was not the result of any extremely exceptional circumstance. He says it was not the stress of work but a "miserable personal life" that impelled him to try drugs. (R.T. at 84, Apr. 15, 1988.) While this brings into question his power of self-control, the record before us does not show that respondent allowed his drug addiction to adversely affect his legal practice.[2]

---

**2.** The special concurrence filed by Justice Corcoran in this case correctly notes that we are

bound by the record in this case, as we are in all cases. We believe his concurrence contains

Many individuals testified and wrote the trial judge that they were very surprised to learn that respondent was addicted to drugs. He did not misappropriate client funds or neglect client business, nor did he involve his clients in his drug usage. This factor weighs very heavily in our decision. Courts have uniformly paid careful consideration to the effect of substance abuse on an attorney's professional practice. *Compare Scarnavack*, 108 Ill.2d at 458, 485 N.E.2d at 2 (attorney accepted cocaine from a client) *and Matter of Diehl*, 243 Kan. 580, 580–582, 757 P.2d 732, 733 (1988) (respondent convicted of possessing marijuana while employed as county attorney) *and Disciplinary Proceedings Against Toran*, 151 Wis.2d 194, 196–197, 443 N.W.2d 927, 928 (1989) (attorney arranged to receive cocaine in payment of a portion of fees to represent client) *with Disciplinary Proceedings Against Armstrong*, 144 Wis.2d 385, 424 N.W.2d 208 (1988) (attorney's misconduct of obtaining prescription drug by forgery or fraud did not result in harm to client and conduct not related to law practice). We will deal very sternly with any lawyer who neglects his clients while abusing drugs. Respondent was perhaps fortunate to have been discovered before his drug use impacted upon his clients' welfare.

### Mitigation/Aggravation

The main aggravating circumstance in this case is that respondent repeatedly violated the laws of this state for an extended period of time. If the evidence in mitigation were not so overwhelming, we would not permit respondent to deal with the public as a lawyer again. But this is an exceptional case in that respondent has not only done everything to demonstrate his contrition and rehabilitation, but also is actively engaged in educating and assisting others who suffer from substance abuse.

In mitigation we consider that respondent has not consumed any alcohol or illegal drugs since December 1987. He was randomly tested on several occasions with negative results. Since February 1988, he has regularly attended meetings of both Alcoholics Anonymous and Narcotics Anonymous. He has cooperated fully with the State Bar of Arizona and is serving on the State Bar Members Assistance Committee (MAC). At the request of the State Bar of Arizona Members Assistance Program (MAP), he has written an article for publication regarding his cocaine addiction in an attempt to provide needed guidance and warning to other drug abusers or potential drug abusers. Furthermore, he has written in newspapers and magazines and has given public lectures relating his experience and has called upon lawyers and others who abuse alcohol or illegal substances to seek help immediately. The Commission that heard this case expressed admiration for respondent's efforts. The State Bar took the unusual step of submitting to this court a joint brief with respondent indicating its view that respondent is fully rehabilitated and could be trusted. Additionally, we note that respondent has been very cooperative and candid before this court, and throughout the disciplinary process.

### Sanction/Proportionality

Because the State Bar and respondent were in agreement that the Commission's recommendation of a three-year suspension was excessive, we invited the Commission to submit its own brief on the issue. In its brief, the Commission points out that under former Rule 29(c), Ariz.R.Sup.Ct., disbarment was automatic upon conviction of any felony. In 1985, the rule was amended and discipline in cases of felony convictions is now determined on a case-by-case basis. The Commission's report, although acknowledging the change in the rule, stated: "[T]he Comment to rule 57 is silent on the extent of change in sanction intended by the new standard, 'as the facts warrant.'" Commission Report No. 6–1220 at 5, filed July 22, 1988. The Commission then contended that "it is doubtful that the Court intended a radical departure from the previous felony sanction, however." *Id.* The

---

some excellent suggestions to bar counsel concerning appropriate procedures in future disci-

plinary cases which involve an underlying criminal conviction.

Commission argued that we intended disbarment to be the presumptive sanction in all cases involving felony convictions under the amended rule. Even so, the Commission refused to recommend disbarment in this particular case and, instead, recommended a three-year suspension.

█ Nothing in amended Rule 57 implies a presumption in favor of disbarment in disciplinary cases involving felony convictions. We must tailor the discipline in each case to its facts. *Murray*, 159 Ariz. at 283, 767 P.2d at 4. This is so because the goal of disciplinary proceedings is different than the goal of criminal proceedings. The goal in disciplinary proceedings is to protect the public in the future, not to punish the offender. In certain cases, protection of the public may not call for permanent disbarment or for a pre-ordained period of suspension. The circumstances in which the misconduct occurred or subsequent efforts at rehabilitation or contrition may indicate that the conduct is not likely to recur and that disbarment would be excessive. At times, other remedies, such as a closely supervised probation, might adequately protect the public so that a harsher discipline would become purely vindictive and punitive. *Baker v. State Bar of California*, 49 Cal.3d 804, 824 n. 7, 263 Cal.Rptr. 798, 808 n. 7, 781 P.2d 1344, 1354 n. 7 (1989); *see The Florida Bar v. Jahn*, 509 So.2d 285, 286 (Fla.1987) (rejecting an automatic disbarment rule whenever an attorney is convicted of a felony); *see Attorney Grievance Comm'n v. Proctor*, 309 Md. 412, 414–415, 418–420, 524 A.2d 773, 774, 776 (1987) (actual culpability of the respondent must be considered rather than the label of the offense).

Under the particular facts and circumstances of this case, we find that disbarment is neither required nor appropriate. Section 5.12 of the ABA *Standards* recommends suspension, not disbarment, from the practice of law when an attorney knowingly engages in illegal use of drugs and the conduct does not involve the sale, distribution, or importation of drugs. Furthermore, after an exhaustive all-states search we have found that the vast majority of

courts impose disbarment only if a sale or distribution of drugs occurred, or if injury to a client is involved, or if no mitigating evidence is offered on the attorney's behalf. *See, e.g., Twohy v. State Bar of California*, 48 Cal.3d 502, 256 Cal.Rptr. 794, 769 P.2d 976 (1989) (attorney, a cocaine addict, twice suspended before, who failed to comply with the orders of the court and who practiced law unlawfully, is disbarred); *People v. Young*, 732 P.2d 1208 (Colo.1987) (citing the ABA *Standards* Rule 5.11, court disbarred an attorney who engaged in the use of cocaine and was convicted of using communication facility to distribute cocaine); *Matter of Payne*, 494 N.E.2d 1283 (Ind.1986) (possession of cocaine, failure to appear for a client at a hearing, and accepting cocaine as payment for legal services warrants disbarment); *Matter of Moore*, 453 N.E.2d 971 (Ind.1983) (prosecutor who possessed two envelopes of marijuana seeds, about 750 grams of marijuana and thirty marijuana plants is disbarred); *Committee on Professional Ethics v. Shuminsky*, 359 N.W.2d 442 (Iowa 1984) (attorney, whose farm contained marijuana, seedlings, seeds, fertilizers, instruction books on growing the plant, etc., is indefinitely suspended with no possibility of reinstatement for three months); *Ohio State Bar Ass'n v. Orosz*, 5 Ohio St.3d 204, 449 N.E.2d 1310 (1983) (attorney convicted of possession of cocaine and conspiracy to possess cocaine who offered no evidence in mitigation is disbarred); *Matter of Bosserman*, 298 S.C. 198, 379 S.E.2d 130 (1989) (attorney addicted to alcohol and drugs who committed numerous acts of misconduct with clients is disbarred); *see also* Annotation, *Narcotics Conviction as Crime of Moral Turpitude Justifying Disbarment or Other Action Against Attorney*, 99 A.L.R.3d 288 (1980).

█ A possessory crime, although not excusable, is less reprehensible than a crime involving sale or distribution of narcotics. *Cf. Kinnear*, 105 N.J. at 394–396, 522 A.2d at 416–17 (distribution); *In re Conduct of Chase*, 299 Or. 391, 702 P.2d 1082, 1089–90 (1985) (attempted possession). We are not prepared to say that possession of a controlled substance under

all circumstances and in every case should necessarily lead to the destruction of a career. By the same token, we do not rule out disbarment in a purely possessory drug case if consideration of all the facts and circumstances warrants such a result.

■ We address here the issue of what discipline is most appropriate on the facts of this record. In the past, we have also commended proportionality and consistency in imposition of sanctions. *Pappas*, 159 Ariz. at 526, 768 P.2d at 1171. This, however, is a case of first impression under the amended rules in Arizona because, for the first time, we discipline an attorney who was convicted of a possessory felony, where his drug use did not progress to the point of impacting or affecting his work.[3] Nonetheless, the Commission, bar counsel and respondent provided us with a large number of somewhat analogous cases from other jurisdictions. We have also conducted our own research. We found that courts are uniformly impressed by an attorney's sincere efforts at rehabilitation and contrition, especially if such efforts demonstrate that the public and the legal system are unlikely to suffer a risk of future misconduct. *See, e.g.*, *In re Nadrich*, 44 Cal.3d 271, 243 Cal.Rptr. 218, 747 P.2d 1146 (1988) (attorney who possessed and sold LSD is suspended five years—one actual and four years probation—in light of extensive rehabilitation efforts); *The Florida Bar v. Weintraub*, 528 So.2d 367 (Fla.1988) (attorney convicted of purchasing and delivering cocaine to a girl friend is suspended for ninety days and two years probation in light of significant remedial steps); *Scarnavack*, 108 Ill.2d at 460–461, 485 N.E.2d at 3 (attorney, who accepted cocaine from a client and was convicted of possession, is censured because of sincere contrition, clean record, and competent professionalism); *Matter of Smoot*, 243 Kan. 589, 757 P.2d 327 (1988) (attorney convicted of pos-

sessing one gram of cocaine is publicly censured and ordered to perform one hundred hours of *pro bono* work because his legal practice was not affected, and he showed true contrition); *Matter of Orlovsky*, 117 N.J. 113, 564 A.2d 844 (1989) (attorney convicted of possessing cocaine is suspended for sixty days in light of attorney's cooperation, candidness and rehabilitation); *Matter of Winston*, 137 A.D.2d 385, 528 N.Y.S.2d 843 (App.Div.1988) (attorney addict who converted client funds and wrote the court a bad check is suspended three years, retroactive to interim suspension, in light of substantial rehabilitation efforts including lecturing against drug abuse).

On the facts of this case, we are convinced that protecting the public does not require respondent's disbarment. In compliance with earlier court orders, respondent did not practice law from September 19, 1986, until September 15, 1988. During this time he went through financial and emotional tribulation. "Although we describe disciplinary proceedings as nonpunitive, we realize that they are anything but from a respondent's standpoint." *Hoover*, 155 Ariz. at 196, 745 P.2d at 943. We believe it fair to give respondent credit for the time spent on suspension. *See Murray*, 159 Ariz. at 283, 767 P.2d at 4.

In light of the compelling rehabilitation evidence in this case, any further suspension would be merely punitive and vindictive. We seek to create an incentive to attorneys who reform and rehabilitate themselves. *See In re Kersey*, 520 A.2d 321, 327 (D.C.App.1987). We echo another supreme court's sentiments about a respondent similar to this one: "It is difficult to imagine what more petitioner could have done to demonstrate the sincerity of his commitment to positive change and rehabil-

---

3. *Matter of Diettrich*, 161 Ariz. 338, 778 P.2d 1234 (1989), is not particularly helpful. Respondent in *Diettrich* had three felony drug convictions, and he was disbarred under former A.R.S. §§ 32–267, 32–272 (providing for disbarment upon conviction of a felony) (repealed effective Jan. 1, 1985). We reinstated Diettrich in 1988. When he failed to comply with the conditions for his probation, we again disbarred him. In *Matter of Lehman*, 146 Ariz. 166, 704 P.2d 807 (1985), we denied an application for readmission by a person disbarred for the felony of possessing cocaine. Since *Lehman* was decided under the former rules, and the motion was denied without explanation, it is not helpful in this proceeding.

itation." *Nadrich*, 44 Cal.3d at 277, 243 Cal.Rptr. at 221, 747 P.2d at 1149.

We therefore believe that a two-year suspension retroactive to September 19, 1986, the date his license was revoked, is adequate and appropriate discipline in this matter.[4] The Committee also recommended that respondent be placed on probation for a period of twelve months. Our rules permit a probationary term of up to two years, with extensions when appropriate. We therefore place respondent on probation for the maximum term of two years, subject to renewal pursuant to Rule 52(a)(6), Ariz.R.Sup.Ct., 17 A.R.S., effective as of the date of the mandate in this case. We approve the following conditions and terms of probation proposed by the Hearing Committee:

1. Respondent shall abstain completely from the use of any illegal drug.

2. Respondent shall submit to body fluid tests, randomly drawn, not exceeding two per month in the discretion of the MAP Director, at the request of the Director or a person designated by the Director. Said body fluids shall be tested for illegal drugs and non-prescribed drugs and such testing shall be conducted within eight hours of the Director's or designate's contact of respondent. Upon request, a split sample will be furnished to respondent or his designate. The test results shall be furnished to the State Bar. All said testing shall be at respondent's expense.

3. Respondent shall have as a "practice monitor," an attorney who will agree in writing to supervise his law practice, monitor his case load, the quality of services rendered and his trust account. Respondent's practice monitor will agree to report to the State Bar any manifestations of relapse, unusual behavior or conduct falling below minimum standards of the profession as set forth in Rule 42, Ariz.R.S.Ct.

4. Respondent shall also be supervised by a "sobriety monitor" with whom he will enter into a mutually agreeable contract for attendance at AA and NA meetings, with a minimum attendance of one meeting of each of these programs per week. The sobriety monitor shall be responsible for reporting any breach of the sobriety contract to the State Bar. Respondent shall continue his membership in the Members Assistance Committee and shall make himself available upon reasonable request of the Director of the Members Assistance Program.

5. Respondent shall pay all costs that are or will be due and owing to the State Bar as a result of these proceedings and respondent's probation prior to termination of probation.

6. Respondent shall keep his books of account, ledger, trust account, books or files open for inspection by the State Bar of Arizona or its designated probation supervisor. Client files shall remain confidential to the extent provided by the Arizona Rules of Professional Conduct.

7. In the event that respondent fails to comply with any of the foregoing conditions and information thereof is received by the State Bar, bar counsel shall file with the hearing Committee a Notice of Non-compliance. The hearing Committee shall conduct a hearing at the earliest practicable date but in no event later than 30 days after receipt of said notice to determine whether a condition of probation has been breached and, if so, to recommend an appropriate sanction therefor.

8. In the event there is an allegation that any of these terms have been breached, the burden of proof thereof

---

4. We are not persuaded by the Commission's objection that the Committee improperly converted the disciplinary proceedings into a reinstatement proceeding without a reinstatement application pursuant to Rule 72, Ariz.R.Sup.Ct., 17A A.R.S. Although the Commission is technically correct, in disciplinary proceedings substance must dominate over form. The Committee has "the authority to fashion a just remedy to the particular circumstances of the case." *Matter of Hoover,* 161 Ariz. 529, 534, 779 P.2d 1268, 1273 (1989); *see Hoover,* 155 Ariz. at 197, 745 P.2d at 944 (holding that it was proper for the Committee to convert a disciplinary proceeding into a disability and reinstatement proceeding without compliance with Rules 72 and 73).

shall be upon the State Bar to prove non-compliance by a preponderance of the evidence.

## CONCLUSION

We adopt the Commission's recommendation as modified. Respondent's two-year suspension is effective as of the date of the original order of revocation, September 19, 1986. Respondent's two-year probation on the terms and conditions herein specified shall commence as of the date of the mandate in this case. Respondent shall pay the State Bar of Arizona $1,032.80 for expenses of these proceedings.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON, J., concur.

CORCORAN, Justice, specially concurring:

I reluctantly agree with the majority that, given the limited disciplinary record available to this court in this case, the discipline the majority imposes on respondent is appropriate. I write separately because I do not believe that bar counsel investigated or presented this case in conformity with the standards required by our rules.

Rule 57(a), Rules of the Supreme Court, provides that a lawyer shall be disciplined upon conviction of a felony "as the facts warrant." That same rule provides that a certified copy of the judgment of conviction be transmitted to the State Bar. Rule 57(a)(2). This proof of conviction constitutes "conclusive evidence of guilt of the crime for which convicted in any discipline proceeding based on the conviction." Rule 57(a)(3). Thus, bar counsel need not relitigate the commission of the criminal offense in the disciplinary proceeding; however, that does not mean the State Bar's investigation of the relevant facts in order to recommend what discipline to impose should stop with the receipt of the criminal judgment.

When, as in this case, the order for interim suspension has been vacated because a felony conviction has been set aside upon successful completion of criminal proba-

tion, see A.R.S. § 13–907(A), the pending disciplinary proceeding "will not automatically terminate." Rule 57(d). Indeed, as happened here, the disciplinary process continues regardless of the disposition of the criminal judgment, and the disciplinary disposition "shall be determined on the basis of *the available evidence.*" Rule 57(d). I believe the combined wording in rule 57(a) that discipline shall be imposed "as the facts warrant" and in rule 57(d) that the disposition shall be based on "the available evidence" imposes a duty on bar counsel to investigate and present more complete evidence of the facts involved in the underlying criminal offense than a mere copy of the formal criminal judgment of conviction.

The sketchy disciplinary record in this case leaves me troubled about respondent's potential involvement with a client in his drug usage. The majority reasons, "He did not misappropriate client funds or neglect client business, *nor did he involve his clients in his drug usage. This factor weighs very heavily in our decision.*" At 158, 791 P.2d at 1041. However, respondent admitted before this court that one of the codefendants with whom he was arrested for possession of cocaine was a former client. Although the limited record before us does not indicate that respondent's drug abuse affected his representation of clients, it creates a doubt in my mind about the extent of his *involvement with a client* in his illegal drug activities.

In reviewing the transcript of testimony before the Committee, I find no evidence presented by bar counsel about this potential involvement with a client. Bar counsel presented a certified copy of respondent's conviction, and told the Committee, "the sole issue today is the determination of the extent of discipline; *in effect, this is a mitigation hearing.*" Bar counsel indicated that "the only witness that we may have that would be classified as a State Bar witness, or perhaps a joint-witness, is ... [the] Director of the [Membership] Assistance Program." Most of the exhibits admitted by stipulation of the parties concern respondent's evidence of rehabilitative

efforts after the crime, not factual circumstances surrounding the actual offense.

The only testimony respondent gave before the Hearing Committee regarding the circumstances of the criminal offense was as follows:

> I was with two other people and a small amount of cocaine had been purchased, and I was stopped by a Phoenix police officer on Buckeye Road on a traffic violation, and eventually we were searched, and 19 milligrams was found in my possession.

The only evidence before us of respondent's potential involvement with a client is in Exhibit 20, respondent's presentence report, which contains the following summary of his statement about the crime:

> Under the advice of his attorney, the defendant stated that he preferred not to discuss the specific details of his arrest. He would like the Court to be aware that he had known Ms. Pickering for over seven years and that although she mentioned that he was her attorney, that he only represented her in the past as a favor to her when she did not have money to hire someone else. *He felt that she was off probation at the time that this occurred and wanted to make it clear that he never encouraged others to use drugs*, particularly since he had a problem with them himself.

(Emphasis added.)

When respondent was questioned at oral argument before this court about the involvement of his client, he was evasive about his professional relationship with his codefendant:

> Q My question to you is, what happened the night you were arrested? Who were you with? And how did they come to be with you?
>
> A One of the persons with me was Pickering, a person I had known for approximately 7 years.
>
> . . . . .
>
> Q A former client?
>
> A Well....
>
> Q The probation report indicates....

> A Okay, and I had informed the probation officer with respect to that that I had known her for years before that, ... that she had gotten into trouble, hired me, begged me to represent her, ... pro bono, ... which I did. But I want it to be clear to the court that my relationship with that particular person was ... six or seven years before that.
>
> Q Was she known to you to be a drug addict at that time?
>
> A User, drug user, I would state, yes.
>
> ....
>
> Q *How did she get involved that night?*
>
> A *We were just in contact.*
>
> Q *Did you bring her to Mr. Solano with you to get drugs?*
>
> A *We were in the car together.*

Upon being questioned at oral argument about what the record indicated about respondent's involvement with a client in his drug use, bar counsel responded as follows:

> Well, specifically, Your Honor, that one woman involved had been an acquaintance of Mr. Rivkind's prior to that representation and after that representation, *but the evidence does not indicate that Mr. Rivkind engaged in drug activities with clients*, that he purchased from clients, or sold to clients. *That's not in the record, sir.*

(Emphasis added.)

I am able to discern, however, from easily obtainable documents of public record regarding respondent's conviction and the convictions of his two codefendants, that the woman arrested with respondent for possession of cocaine was not only a former client, but was, at the time of the arrest, still on a 3–year probation imposed on December 5, 1984, for the conviction for which he had represented her. Moreover, respondent was present when she was so sentenced. In fact, as a result of her "involvement" with her attorney on the night of their arrest, her previous undesignated offense was designated a felony conviction, and she was subsequently convicted of a drug offense. However, bar counsel failed to bring this to the attention of any of the three tribunals before which they present-

ed this case. I raise this point not to produce another aggravating factor outside the scope of the disciplinary record before this court, but to indicate the need for bar counsel to fully investigate the facts and present evidence regarding the underlying criminal offense. Bar counsel must do more than simply produce a copy of the judgment of conviction when conducting a disciplinary proceeding under rule 57(d). I realize that doing so may result, in future cases, in the filing of additional counts of misconduct, but this may be necessary to protect clients, the public, the bar, and the bench.

I believe that bar counsel, as the representative of the State Bar of Arizona, has a duty to investigate the full factual record of a respondent's criminal conviction. *See* R. Abel, *American Lawyers* 246–47 (1989). I believe "the available evidence" before the committee, the commission, and this court should include, at a minimum, not only the certified copy of the judgment of conviction, but also the following relevant documents from respondent's criminal file as evidence of the factual background of respondent's misconduct: (1) the findings of fact and conclusions of law made by the trial court in ruling on respondent's motion to suppress; (2) the decision of the court of appeals upon respondent's appeal from his conviction; (3) the presentence report submitted by the probation department in the criminal files of respondent's codefendants; and (4) any available transcripts regarding respondent's statements about the circumstances of the arrest, and the statements of his codefendants and other witnesses.

However, because bar counsel did not investigate the facts to this extent and present pertinent evidence of client involvement in this criminal offense, I reluctantly must agree with the majority that respondent's "involvement with a client" in his illegal drug activity is not established in this limited record, which contains evidence only of the mitigating circumstances regarding his rehabilitative efforts, which occurred only after his conviction. However, if respondent's involvement with his client could be inferred from the records in the criminal cases, and if those records were

before us, I would have found that involvement to be an extremely aggravating circumstance. *See, e.g., In re Toran,* 151 Wis.2d 194, 443 N.W.2d 927 (1989) (attorney arranged to receive cocaine from client in partial payment of fees); *People v. Smith,* 778 P.2d 685 (Colo.1989) (after representing client, attorney purchased cocaine from client and allowed police to record conversation to avoid drug charges filed against himself). I believe that such involvement in criminal activity with a client, if evidenced by the disciplinary record before us, would have warranted substantially more serious discipline than that imposed here.

The majority has applied ABA *Standard* 5.12, which recommends suspension when the attorney's criminal conduct does not include the aggravating elements contained in *Standard* 5.11. However, *Standard* 5.11 recommends disbarment when the criminal conduct involves "an attempt or conspiracy or solicitation of another to commit" any of the named offenses, which include sale or distribution of controlled substances. If this record had established that respondent involved his client in obtaining his illegal drugs, I would have applied the more harsh disbarment discipline recommended by *Standard* 5.11.

As in all disciplinary cases, the real issue is not whether this attorney has suffered enough or whether the recommended sanctions are excessive, but how to best protect the public from future harm and maintain its respect for the legal profession. I believe the public is best protected from attorneys who involve their clients in crime by the sanction of disbarment. *See, e.g., The Florida Bar v. Beasley,* 351 So.2d 959, 960 (Fla.1977).