854 P.2d 768

**In the Matter of a Member of the State Bar of Arizona, Leonard Gene BROWN, Respondent.**

No. SB–93–0012–D.

Comm. Nos. 89–0812, 89–1807, 89–2020 and 91–0321.

Supreme Court of Arizona.

June 17, 1993.

Gilbert T. Venable, Phoenix, for respondent.

Yigael M. Cohen, Phoenix, State Bar Counsel and Harriet L. Turney, Chief Bar Counsel, for State Bar of Arizona.

## JUDGMENT AND ORDER

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal therefrom having been filed, and the Court having declined *sua sponte* review,

IT IS ORDERED, ADJUDGED AND DECREED that **LEONARD GENE BROWN**, a member of the State Bar of Arizona, is hereby suspended from the practice of law for a period of six months for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that **LEONARD GENE BROWN** shall pay restitution in the amount of $3,500.00 to Client Gales.

IT IS FURTHER ORDERED that, upon completion of the suspension, **LEONARD GENE BROWN** shall be placed on probation for a period of two years. The following terms and conditions of probation will go into effect only if **LEONARD GENE BROWN** leaves the office of the Coconino County Attorney:

1. **LEONARD GENE BROWN** shall provide the State Bar with thirty days' notice of his intent to return to private practice.

2. A person to be designated by the State Bar shall supervise **LEONARD GENE BROWN** for the term of probation ("Practice Monitor"). The Practice Monitor shall review **LEONARD GENE BROWN's** practice on a monthly basis and shall provide a quarterly report to the State Bar.

3. The quarterly report shall include case statistics which shall state the nature of each case **LEONARD GENE BROWN** is handling, the date the file was opened, what action has been taken in the case in the prior three months and, if applicable, when the case closed. **LEONARD GENE BROWN** shall also keep time records for each case. **LEONARD GENE BROWN** will timely re-

spond to any requests for information or requests for meeting by the Practice Monitor.

4. **LEONARD GENE BROWN** shall maintain malpractice insurance during the time of probation.

5. **LEONARD GENE BROWN** shall pay any costs incurred in connection with his Practice Monitor while on probation.

IT IS FURTHER ORDERED that pursuant to Rule 63(a), Rules of the Supreme Court of Arizona, **LEONARD GENE BROWN** shall notify all of his clients, within ten (10) days from the date hereof, of his inability to continue to represent them and that they should promptly retain new counsel, and shall promptly inform this court of his compliance with this Order as provided by Rule 63(d), Rules of the Supreme Court of Arizona.

IT IS FURTHER ORDERED **LEONARD GENE BROWN** shall pay the costs of these proceedings in the amount of $1,146.67.

EXHIBIT A

BEFORE THE DISCIPLINARY COMMISSION OF THE SUPREME COURT OF ARIZONA

Comm. Nos. 89–0812, 89–1807, 89–2020, and 91–0321

In the Matter of

Leonard Gene Brown,

a Member of the

State Bar of Arizona,

Respondent.

DISCIPLINARY COMMISSION REPORT

[Filed Feb. 22, 1993.]

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on October 17, 1992, for oral argument pursuant to Rule 53(d), R.Ariz.Sup.Ct. The Commission considered the hearing committee's recommendation of approval of the agreement for discipline by consent providing for suspension, probation, and restitution.

At that hearing, the Commission issued a notice to the parties stating it would accept the agreement on the condition that it be amended to include a provision that Respondent undergo a behavioral health reevaluation and follow any recommendations made as a result. On November 20, 1992, the State Bar and Respondent filed a stipulation adding those terms to the agreement. The Commission again considered this matter on December 12, 1992.

*Decision*

After consideration of oral argument by the State Bar and Respondent and review of the record on appeal, the Commission, by a vote of nine aye, adopts the committee's recommendation that the agreement for discipline by consent, as amended by the stipulation filed November 20, 1992, be accepted, and that Respondent 1) be suspended for a period of six months, 2) make restitution of $3,500 to Client Gales (No. 91–0321), and 3) upon completion of his term of suspension, be placed on probation, under the terms and conditions set forth herein. The Commission also unanimously adopts the findings of fact and conclusions of law of the hearing committee.

*Terms of Probation*

The Commission recommends that, upon the completion of suspension, Respondent be placed on probation for a period of two years. The following terms and conditions of probation will go into effect only if Respondent leaves the office of the Coconino County Attorney:

1. Respondent shall provide the State Bar with thirty days' notice of his intent to return to private practice.

2. A person to be designated by the State Bar shall supervise Respondent for the term of probation ("Practice Monitor"). The Practice Monitor shall review Respondent's practice on a monthly basis and shall provide a quarterly report to the State Bar.

3. The quarterly report shall include case statistics which shall state the na-

ture of each case Respondent is handling, the date the file was opened, what action has been taken in the case in the prior three months and, if applicable, when the case closed. Respondent shall also keep time records for each case. Respondent will timely respond to any requests for information or requests for meeting by the Practice Monitor.

4. Respondent shall maintain malpractice insurance during the time of probation.

5. Respondent shall pay any costs incurred in connection with his Practice Monitor while on probation.

### Facts

The amended complaint in this matter contains five counts,[1] and concerns representation of four groups of clients over a period from 1986 to 1991. A sixth count alleges prior discipline.

Count One (No. 89–1807) concerns Respondent's retention by Client A and Client B to prepare papers involving the sale of a business from Client A to Client B. Respondent delegated the matter to an attorney in his office who, although licensed in Louisiana, was not yet licensed to practice law in Arizona. In addition, Respondent failed to adequately explain to Clients A and B the possible ramifications of his representation of both parties in the sales transaction. Respondent also failed to adequately explain the terms and conditions of the contract to Client B.

Regarding Count Two (No. 89–2020), Respondent admits he was paid a retainer of $1,500 by Client C, the family of a prison inmate, to take action to reclassify the prisoner to the status he had prior to the withdrawal of his "good time" for assaulting another prisoner. Respondent failed to pursue the matter and failed to adequately communicate with Client C and the prisoner for nearly one year after accepting representation. Thereafter, although he did not consider it to be a worthwhile remedy,

Respondent told the prisoner that he would file a special action on his behalf immediately. Respondent did not file the special action for another year, however, and then only after learning that the prisoner had filed a complaint against him with the State Bar. Upon filing, the court found that the special action was frivolous, and fined Respondent.

Count Three (No. 89–0812) concerns Respondent's failure to adequately communicate with Client D and failure to act with diligence in pursuing his case.

Both Counts Five and Six (No. 91–0321) address Respondent's representation of Clients E and F in a civil forfeiture proceeding, for which Respondent received a retainer of $3,500. In response to the petition for remission or mitigation of forfeiture filed by Respondent, the court granted Respondent leave to apply for relief of judgment pursuant to Rule 60(c), and ordered the forfeiture stayed until the Rule 60(c) motion was filed. Nearly seven months later, the State moved to set aside the stay, as Respondent had failed to file the Rule 60(c) motion. Although Respondent subsequently filed the motion nearly two weeks later, the court denied it as untimely and reinstated the order of forfeiture. Throughout his handling of this matter, Respondent also failed to adequately communicate with his clients.

Respondent admits that he failed to adequately cooperate with the State Bar regarding Clients C, D, E, and F.

### Discussion of Decision

The State Bar and Respondent conditionally admit, and the committee and Commission agree, that Respondent's conduct violated the Rules of Professional Conduct, as follows:

1. Respondent failed to provide competent representation, in violation of ER 1.1, to Clients A and B, and Client C;

2. Respondent failed to act with reasonable diligence and promptness in his repre-

---

**1.** The amended complaint actually includes a "Count Seven", however, as there is no "Count Four", there are actually only six counts. For the purposes of this report, the Counts will be referred to as they are labeled in the amended complaint.

sentation of Clients C, D, E, and F, in violation of ER 1.3;

3. Respondent failed to adequately communicate with all six of the subject clients, in violation of ER 1.4;

4. Respondent engaged in a conflict of interest through his representation of both Client A and Client B, in violation of ER 1.7;

5. Respondent violated ER 3.1 when he filed a special action for Client C without believing it to be a worthwhile remedy;

6. Respondent violated ER 5.3 when he delegated Client A and B's case to an attorney in his firm who was not a licensed attorney in Arizona; and

7. Respondent violated ER 8.1(b) and Supreme Court Rule 51(h) and (i) when he failed to cooperate with the State Bar's investigations into the matters of Clients C, D, E, and F.

In determining the appropriate sanctions, the Court considers the American Bar Association's *Standards for Imposing Lawyer Sanctions* a suitable guideline. *In re Rivkind*, 164 Ariz. 154, 157, 791 P.2d 1037, 1040 (1990). The Commission uses that guideline, as well.

Standard 4.4 address a respondent's lack of diligence. Specifically, Standard 4.42 provides for suspension when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client or a lawyer engages in a pattern of neglect and causes injury or potential injury to a client. Both alternatives are applicable. Perhaps Respondent's initial failure to handle his clients' cases was the result of negligence rather than intentional. However, once the clients began making efforts to discover the status of their cases and Respondent became aware of his negligence, he continued his pattern of inaction on their cases.

Standard 4.3 addresses failure to avoid conflict of interest. Standard 4.32 provides for suspension when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client. Respondent represented both the buyer and seller (Clients A and B) in a transaction without informing them of the possible ramifications. There is always potential harm when a conflict of interest exists.

Standard 7.0 concerns violations of duties owed as a legal professional, one of which concerns assisting in the unauthorized practice of law (Theoretical Framework, pp. 5–6). Standard 7.2 provides for suspension when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client. Standard 7.3 provides for reprimand (censure in Arizona) when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client. It is unclear from the record whether Respondent was aware that the attorney to whom he delegated the case of Clients A and B was not yet licensed in this state. Under this Standard, therefore, it is not clear whether this particular ethical breach by Respondent would warrant a suspension or censure.

However, another of the duties a lawyer owes as a professional under Standard 7.0 is the duty to maintain the integrity of the profession (Theoretical Framework, pp. 5–6). Respondent's knowing failure to cooperate with the State Bar in the initial investigations into these matters is a violation of that duty, warranting suspension.

█ Based on the relevant Standards it is clear that suspension, at the very least, is the proper sanction for Respondent's misconduct. Standards 9.32 and 9.22, which list factors to be considered in mitigation and aggravation, respectively, assist in determining the appropriate length of that suspension.

The aggravating factors present are a pattern of misconduct, multiple offenses, and bad faith obstruction of the disciplinary process by intentionally failing to comply with the disciplinary agency. In addition, Respondent was previously censured

in 1987 and 1990,[2] and was informally reprimanded in 1987.

The factors in mitigation are significant. Respondent had no dishonest or selfish motive. In fact, Respondent's problems were due, in part, to his lack of a selfish motive; in his desire to help the inner-city community where he practiced, Respondent undertook a caseload that was larger than he was able to handle. Respondent is no longer in private practice. He is employed by the Coconino County Attorney's Office, where he will receive the supervision he did not have in his previous situation.

Respondent has exhibited remorse and made a good faith effort to make restitution to the clients who were harmed. He settled a malpractice action Client B filed against him by paying her $30,000. He has paid out a fee arbitration award to Client C in the amount of $1,000. Further, Respondent has indicated he is willing to refund the entire retainer paid to him by Client F, a total of $3,500.

Standard 9.32 also lists character or reputation as factors to be considered in mitigation. The record on appeal includes numerous reference letters from community leaders attesting to Respondent's high standing in the community.

Finally, Respondent was experiencing personal and emotional problems during the period of the misconduct. The record on appeal contains a letter from Roger Nelson, Director of the Membership Assistance Program of the State Bar, concerning his evaluation of Respondent. Mr. Nelson indicates that the personal and emotional problems Respondent was undergoing at the time of the misconduct "... seriously impacted his ability to function in a private practice situation."[3]

Were it not for the mitigating factors, the Commission would be disinclined to accept an agreement providing for such a short-term suspension, particularly in light of Respondent's prior discipline and pattern of misconduct. However, it is clear that Respondent's neglect of his clients and cases was the result of unique personal and emotional problems and difficulties in managing his law office which began after his law partner left the practice of law. These circumstances are no longer present.

▪ The purpose of lawyer discipline is not to punish the offender, but to protect the public, the profession, and the administration of justice. *In re Neville*, 147 Ariz. 106, 708 P.2d 1297 (1985). Upon review of the mitigating factors, the Commission believes a six-month suspension is appropriate. This suspension will be augmented by the two-year probation,[4] the terms of which were specifically crafted to monitor and prevent any future problems of this kind.

The Commission also recommends that Respondent make restitution to Client C (Gales) in the amount of $3,500.

RESPECTFULLY SUBMITTED this 19th day of February, 1993.

/s/ Raymond W. Brown
Raymond W. Brown, Chair
Disciplinary Commission

---

2. The 1990 censure received by Respondent was issued subsequent to the conduct in all but one of the present matters, and arose out of the same set of circumstances. Therefore, the Commission cannot consider this censure a true "prior" for the purposes of aggravation.

3. June 2, 1992, letter from R. Nelson to Y. Cohen, Attachment 4 to Joint Memorandum in Support of the Rule 56(a) Agreement for Discipline by Consent.

4. The terms of probation will only go into effect should Respondent leave his current place of employment.