881 P.2d 333

In the Matter of a Member of the State Bar of Arizona, Robert A. CHARD, Bar No. 001400, Respondent.

No. SB-94-0072-D.

Comm. Nos. 89-1188, 89-1733 and 90-0310.

Supreme Court of Arizona.

Sept. 6, 1994.

Harry A. Stewart, Jr., for respondent.

Daniel J. O'Connor, Frank I. Powers, State Bar Co-Counsel, and Harriet L. Turney, Chief Bar Counsel, State Bar of Arizona, for the State Bar.

## JUDGMENT AND ORDER

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal having been filed before the Court,

IT IS ORDERED, ADJUDGED AND DECREED that **ROBERT A. CHARD,** a member of the State Bar of Arizona, is hereby censured for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that **ROBERT A. CHARD** shall assume the outstanding debt of Dallas Perkins, obtain and record a satisfaction of judgment thereof, and make restitution to Dallas Perkins in the amount of $600.00.

IT IS FURTHER ORDERED that pursuant to Rule 52(a)(8), Rules of the Supreme Court of Arizona, the State Bar of Arizona is granted judgment against **ROBERT A. CHARD** for costs incurred by the State Bar of Arizona in the amount of $5,339.04, together with interest at the legal rate from the date of this judgment.

EXHIBIT A

BEFORE THE DISCIPLINARY
COMMISSION
OF THE
SUPREME COURT OF ARIZONA

Comm. Nos. 89-1188, 89-1733, and 90-0310

In the Matter of
ROBERT A. CHARD,
Attorney No. 001400
a Member of the State
Bar of Arizona
RESPONDENT.

DISCIPLINARY COMMISSION REPORT

[Filed July 6, 1994.]

This matter first came before the Disciplinary Commission of the Supreme Court of

Arizona on April 17, 1993, pursuant to Ariz. R.S.Ct., Rule 56(a), for review of the Hearing Committee's recommendation of acceptance of the agreement for discipline by consent providing for censure and probation. The Commission, by order filed June 15, 1993, rejected that recommendation and remanded the matter to the Hearing Committee for further proceedings.

This matter again came before the Disciplinary Commission on May 6, 1994, for review of the Hearing Committee's recommendation of acceptance of the amended agreement for discipline by consent providing for censure, probation, and restitution.

### Decision

After consideration of the record on appeal, the Commission, by a concurrence of the eight Commissioners considering the matter,[1] accepts the Hearing Committee's recommendation of acceptance of the agreement for discipline, which provides that Robert A. Chard ("Chard") be censured and placed on probation for a period of two years under the terms and conditions set forth below, which terms shall include that he assume the outstanding debt of Client B (Matter No. 90–0310), obtain and record a satisfaction of judgment thereof, and make restitution to Client B in the amount of $600.00, representing payments already made by Client B in payment of that debt.

### Probation

The Commission recommends that Chard be placed on probation for a period of two years, under the following terms and conditions:

1.   Chard shall either enter into a written fee agreement with each of his clients explaining the nature of fees and whether they are refundable or non-refundable, to be signed by the client or, at the least, in each case send a fee letter upon the commencement of representation explaining the nature of his fees and whether they are refundable or non-refundable. Each letter is to be signed by the client. This fee agreement or letter shall not be destroyed, but shall remain in the file;

2.   Chard shall attend 24 hours of continuing legal education each year consisting of: two to eight hours in the area of general civil litigation; eight to fourteen hours in the area of litigation, trial practice, or the economics of small practices; and six to eight hours in the area of ethics;

3.   Chard will assume Client B's outstanding debt to First American Title Company and obtain and record a satisfaction of judgment, as well as reimburse Client B $600.00 for payments he already made to First American Title on this debt;[2]

4.   Chard shall keep time records for each case he handles that identify the date, the time expended, and the nature of the work performed, along with details sufficient to be utilized in a fee dispute. Time records shall not be destroyed. If the time records are kept in a computerized form, the disk shall remain intact for examination;

5.   Chard shall prepare case statistics every three months to be submitted to a practice monitor designated by the State Bar. These case statistics shall state the nature of the case he is handling, the date the file was opened, what action has been taken in the case in the past three months, and when the case is closed. Chard will cooperate in any and all investigations conducted by the State Bar or by the practice monitor;

6.   Chard will not handle more than sixty cases at any one time, unless authorized in writing by the State Bar or the practice monitor, who shall make a reasonable determination based upon the case statistics submitted by Chard and other reasonable factors. When requested by the practice monitor, Chard shall produce his time records on any case. Chard will timely re-

---

1.   Commissioner Greer did not participate in these proceedings.

2.   On April 13, 1994, Chard filed a Statement on Review indicating that he has complied with this term of probation. Attached to that statement on review is a copy of the satisfaction of judgment against Client B, recorded March 3, 1994, and a letter from the State Bar confirming the receipt of $600.00 from Chard for Client B.

spond to any requests for information or requests for meetings by the State Bar or practice monitor.

7. For each case handled by Chard, he shall prepare, within a reasonable period of time after accepting the case, a memorandum setting out the litigation plan, including the investigation that needs to be performed on the case. The memorandum will be placed in the client's file and will not be destroyed;

8. Telephone message slips from clients will be placed in the correspondence file and Chard shall note in writing on each slip the time and date the calls were returned, or if returned by office personnel, the time and name of the office personnel returning the call;

9. The practice monitor may request early termination of these conditions of probation if, in the practice monitor's judgment, additional probation is not necessary, by notifying the Committee and the State Bar; and

10. Chard shall pay all costs and expenses incurred by the State Bar in connection with these proceedings, and shall pay any reasonable costs incurred in connection with monitoring Chard while on probation, including the reasonable hourly fees of the practice monitor. Chard may repay such fees and costs in a sum not to exceed $200.00 per month until the full amount, together with the statutory interest from the date of the order of probation, is paid in full.

### Facts

The complaint in this matter contains three counts which allege Chard's mishandling of the cases of three clients from late 1975 through 1988.

Client A was terminated by a corporation in Lancaster, Pennsylvania, after which she moved to Arizona for health reasons, and retained Chard to represent her in her claim against the former employer. Local Pennsylvania counsel was also retained in the matter. During the case, there was some question as to which statute of limitations applied to employee liability claims; one authority held that it was three months, another held that it was six years. The question was ultimately resolved a number of years later by the United States Supreme Court, which held that the statute of limitations was six months. Based on that decision, the statute of limitations in this matter had run, and the case was dismissed. Client A subsequently filed a malpractice suit against Chard that is currently pending in Maricopa County.

Chard has admitted that he negligently failed to use diligence in the preparation and filing of the complaint within the applicable statute of limitations.

Chard's dealings with Client B, who had retained Chard numerous times over the years, also involve, *inter alia*, the expiration of a statute of limitations. Because of a delay in the closing of the escrow and sale of Client B's house,[3] the IRS withdrew an offer it had made to release Client B's lands, on which it held tax liens, at a discounted rate of $2,100. The title company, in order to guarantee the title, paid the IRS the full, non-discounted amount of the tax liens with its own funds and secured the release of the liens. It then reimbursed itself from the first payment made by Client B.[4]

Client B believed the title company should not have paid the full amount of the liens, and then used his payment to recover its money. He retained Chard to sue the title company for conversion, negligence, breach of fiduciary duty, and breach of contract. Chard filed the complaint, but allowed the statute of limitations to expire on the first three claims. The fourth claim, for breach of contract, was dismissed for failure to prove damages. The court stated that, as Client B's liens were paid off by the title company, Client B had no damages. Judgment was entered for the defendant.

---

3. The IRS had forced the sale on the house during Client B's bankruptcy proceedings.

4. Client B's mother had bid on and purchased the house, then assigned and deeded the house back to Client B. Therefore, Client B made the payments to the title company.

Before Chard withdrew from representation a few days later, the title company applied for an award of attorneys' fees and costs. After his withdrawal, Chard mailed all subsequent pleadings he received in this matter to Client B; however, he inadvertently mailed them to an incorrect address—using 47th "Drive" rather than 47th "Street." Although Client B never received the letters and pleadings, neither were they returned to Chard. Therefore, Chard never knew that Client B had not received these subsequent pleadings. A judgment was entered against Client B for a substantial amount of attorneys' fees and costs.

Chard has admitted that he failed to adequately prepare for trial and negligently failed to file the action before the statute of limitations expired on several of the claims. He also admitted that he failed to properly advise Client B about the speculative nature of the claim, and acknowledges he should have advised Client B against filing a frivolous lawsuit, in which he had no damages, that could result in a judgment for attorneys' fees and costs. Finally, Chard admitted that, although the mailing error was a clerical one, he had the ultimate responsibility to ensure that all post-trial correspondence was properly addressed, especially in light of Chard's withdrawal from representation.

Chard was retained by Client C in 1988, but did not adequately inform her of his billing rate or billing methods. After Chard filed two complaints on her behalf and performed preliminary work on the cases, Client C became dissatisfied and fired him prior to trial. When Client C attempted to pick up her file from Chard's office, a dispute arose with his staff as to the release of the file without payment of the final bill. Chard eventually released the file. In addition, although a review of Client C's file and Chard's time sheets indicated the amount of work he performed on the case, Chard prepared his bill by estimating the time it took him to prepare each document in the matter.

Chard admits that he failed to adequately communicate with Client C about his fee, and that he prepared the bill based only on estimates of his time spent in the matter.

Chard admits that his conduct violated ER 1.1, ER 1.3, and ER 1.4.

## Discussion of Decision

The Commission agrees that Chard's conduct demonstrated a lack of competence, lack of diligence, and failure to adequately communicate with clients, in violation of ER 1.1, ER 1.3, and ER 1.4.

In determining the appropriateness of a disciplinary sanction, the Commission finds it helpful to review the American Bar Association's *Standards for Imposing Lawyer Sanctions.* This is the guideline used by the supreme court. *In re Rivkind,* 164 Ariz. 154, 157, 791 P.2d 1037, 1040 (1990).

Standard 4.4 concerns cases involving lack of diligence and failure to communicate. Standard 4.43 provides for reprimand (censure in Arizona) when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client. Chard allowed the statute of limitations to expire in two matters, failed to communicate the speculative nature of a client's case to the client, and failed to ensure that pleadings involving a potential judgment for attorneys' fees and costs against a client were sent to the correct address. Chard's behavior was unquestionably negligent. As the Commentary to this Standard indicates, most courts impose a censure when the lawyer is negligent.

Standards 9.32 and 9.22, which list factors to be considered in mitigation and aggravation, respectively, also assist in determining the appropriate sanction. A number of aggravating factors are present. Chard has substantial experience in the practice of law, having been admitted to the Arizona State Bar in 1962, and his misconduct involves multiple offenses. In addition, the Commission finds that Chard has exhibited an indifference to making restitution; although he has now made complete restitution to Client B, he did so only after the Commission made it clear, in its rejection of the initial agreement for discipline, that it believed restitution was in order.

Numerous mitigating factors listed in Standard 9.32 are also present. Chard had

no dishonest or selfish motive; he was experiencing personal problems during some of the misconduct, undergoing a number of surgeries requiring short hospitalizations; he exhibited full and free disclosure to the State Bar and throughout these disciplinary proceedings; he has sought interim rehabilitation, having already implemented a number of the time and office management procedures outlined in the terms of probation; he is subject to the imposition of other penalties or sanctions as the defendant in the malpractice suit filed by Client A; and he has exhibited remorse for his conduct.[5]

In addition to those factors listed in Standard 9.32, the Commission considered additional factors in mitigation. First, although there is no dispute that Chard allowed the statute of limitations to expire in Client A's case, the Pennsylvania law at that time was unclear and was in a state of flux as to which time frame should apply. Chard's error in this matter was as much a tactical mistake as it was an ethical violation. In addition, throughout the period when all of the misconduct occurred, Chard was carrying an extremely heavy caseload of over 100 cases. While Chard is certainly responsible for the size of his own caseload, it appears he did not realize that he was "in over his head" until it was too late and, as a result, he was unable to keep abreast of all aspects of all of his cases. Finally, the Commission notes that, while it was Chard's responsibility to ensure that all documents were mailed to his client's correct address, typographical errors do occur. The error in this matter was compounded by the fact that the incorrectly addressed mail was never returned. As such, Chard was unaware of the error, and therefore took no measures to correct the mistake which ultimately resulted in harm to Client B.

The Standards indicate that censure is the appropriate sanction for this type of conduct. While the Commission finds that the mitigating factors present in this matter clearly outweigh those in aggravation, it finds them insufficient to warrant a decrease in the sanction imposed. Rather, the Commission finds that the mitigation offsets the aggravation present, and is a further indication that a censure, rather than a suspension, is appropriate. This is particularly so in light of the many probationary terms which are specifically aimed at implementing procedures and monitors which should help Chard to avoid the recurrence of the same difficulties. The Commission, therefore, recommends that Chard be censured and placed on probation for a period of two years, as detailed above.

RESPECTFULLY SUBMITTED this 6th day of July, 1994.

/s/Steven L. Bossé
Steven L. Bossé, Chairman
Disciplinary Commission

---

5. Although the agreement for discipline indicates that there is an "absence of any prior disciplinary record," the Commission notes that Chard was censured in 1978. Chard and the State Bar earlier filed a supplemental stipulation to the initial agreement for discipline which acknowledged the prior censure, but indicated that its remoteness in both time and subject matter made it immaterial for these purposes. For these reasons, the Commission did not consider either the existence of or the lack of prior disciplinary history.