826 P.2d 1150

**In the Matter of Dennis N. RUBENSTEIN, A Member of the State Bar of Arizona, Respondent.**

**No. SB–92–0010–D.**
**Disc. Comm. Nos. 87–0574, 87–0625, 87–0629, 87–0655, 87–0793, 87–1257 and 88–1759.**

Supreme Court of Arizona.

March 17, 1992.

JUDGMENT OF CENSURE AMENDED

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision, and no timely appeal having been filed,

IT IS ORDERED, ADJUDGED AND DECREED that:

1. DENNIS N. RUBENSTEIN, a member of the State Bar of Arizona, is hereby censured for conduct in violation of his duties and obligations as a lawyer, as disclosed in the Commission Report attached hereto as Exhibit A.

2. Respondent shall pay to the State Bar of Arizona costs and expenses incurred in this matter in the sum of $6,661.01 with interest at the legal rate, within thirty days from the date hereof as provided by law.

EXHIBIT A

ORDER UPON DECISION

The Disciplinary Commission having this date made its Report in the captioned matter, and pursuant to Sup.Ct.Rules, Rule 53(d)(2),

IT IS ORDERED:

1. The Commission Report in the captioned matter is hereby adopted by the Commission, and it shall be filed by the Disciplinary Clerk.

2. Unless a Notice of Appeal is timely filed by Respondent or the State Bar, the Disciplinary Clerk shall submit this matter to the Clerk of the Supreme Court of Arizona for entry of Judgment of Censure, pursuant to R.Ariz.S.Ct., Rule 52(a).

3. In the event a Notice of Appeal is timely filed, the Disciplinary Clerk shall transmit the entire record on appeal to the Clerk of the Supreme Court, pursuant to R.Ariz.S.Ct., Rule 53(e)(1).

.    .    .    .    .

4. The Disciplinary Clerk shall submit to the Clerk of the Supreme Court a statement of costs and expenses incurred in these proceedings together with a request to include in the judgment, an assessment of those costs and expenses against the respondent, pursuant to Rule 53(e)(3).

DONE at Phoenix, Arizona on <u>Nov. 15,</u> 1991.

/s/ <u>Larry W. Suciu</u>
Chairman

## DISCIPLINARY COMMISSION REPORT

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on September 14, 1991, for review of the hearing committee's recommendation of censure and probation, oral argument having been waived by stipulation. No objections to the hearing committee's recommendation were filed.

### Decision

After review of the record on appeal, the Commission, by a unanimous vote of eight aye,[1] adopts the committee's recommendation that Respondent be censured and placed on probation for a period of two years, under the terms and conditions set forth herein. The Commission also unanimously adopts the committee's findings of fact and conclusions of law.

[1] Commissioner Andrews was not present. David D. Dodge participated in the proceedings

### Terms of Probation

The Commission recommends probation for a period of two years, under the following terms and conditions:

1. Respondent shall participate in the Oklahoma Lawyers Helping Lawyers Program or, if he returns to Arizona to practice law, Respondent shall participate in the Membership Assistance Program.

2. Respondent shall submit monthly reports to the State Bar which include the cases he is handling, the nature of those cases, and their status.

3. Respondent shall provide the names and addresses of clients, opposing counsel, and judges, who would be contacted by the State Bar only if there is an indication that Respondent is in violation of any other terms of probation.

4. Respondent is required to permit periodic, but no more than quarterly, inspections of his law office by Chief Bar Counsel or her designee.

5. Respondent is required to report any complaints against him that are received by the Oklahoma Bar disciplinary authority.

6. Respondent is required to refrain from any violations of the Rules of Professional Conduct.

7. Respondent is required to submit to quarterly evaluations by Dr. John A. Call, who will submit a report from those sessions to Chief Bar Counsel or her designee, including any recommendations for treatment.

8. Respondent is required to pay all reasonable costs of administering and enforcing this probation.

### Facts

The complaint details Respondent's conduct in April and May of 1987, when, for all intents and purposes, Respondent stopped practicing law without notifying his clients. Specifically, Respondent became unavailable and stopped performing any work on behalf of at least six clients, despite the fact that he had already begun work on

as an ad hoc member. At the time of the hearing, one public seat was vacant.

their cases and, in some instances, accepted retainers. Respondent stopped contacting clients, stopped returning telephone calls and letters, and locked and eventually closed his office. In answer to their queries, clients were given varying versions of where Respondent was. They were told he was ill, out of town, or in court; had a family emergency; or that he had simply disappeared. Respondent remained unreachable for some months, which resulted in delays to the outcome of those clients' cases. One client chose not to pursue his lawsuit because of the delay. Respondent did eventually resolve the problems with most of those clients.

Additionally, the amended complaint also included a petition for Respondent's transfer to disability inactive status, which was based on statements and admissions made by Respondent, and his repeated distortions of fact. The committee considered the evaluations of both the psychiatrist and psychologist/J.D. who examined Respondent. Upon review, they determined that although Respondent may have been impaired during the time of the conduct in question, as of March, 1991, Respondent's ability to practice law was no longer impaired, and, therefore, the issue of his transfer to disability inactive status was no longer relevant.

One final count of the amended complaint alleged that Respondent brandished a gun on a process server who came to his office. However, the hearing committee found that there was not clear and convincing evidence to support that claim, and dismissal of the count is recommended.

### Discussion of Decision

The hearing committee found that Respondent violated numerous Rules of Professional Conduct, specifically, ER 1.3, ER 1.4, ER 1.15(b), and ER 1.16(d). The Commission agrees there is no question that Respondent failed to communicate with those six clients, at the very least during the month of April, 1987. He did not exercise due diligence in a number of cases and did not adequately protect the interests of his clients during this period. Additionally,

in one instance, he paid funds to his clients, instead of directly to an interested third person, as was previously agreed by all parties.

The results of the abandonment of his practice were varied. One client decided to simply drop the lawsuit he had been pursuing. Another client was not notified that her divorce was final until several months after the fact. Yet another had to find new counsel. In one real property case, Respondent's delay in filing a final order resulted in the client waiting an additional six months to put his property on the market, as he was advised by the court not to do so until the judgment was final. In many instances, Respondent delayed returning papers, lost documents supplied to him, and did not return files.

The Court looks to the American Bar Association's *Standards for Imposing Lawyer Sanctions* as a suitable guideline in determining the appropriate sanctions. *In re Rivkind,* 164 Ariz. 154, 157, 791 P.2d 1037, 1040 (1990). The Commission is guided by those standards, as well.

Standard 4.42 provides for suspension when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or engages in a pattern of neglect and causes injury or potential injury to a client. Respondent clearly knew he was not performing services for which his clients had retained him when he stopped practicing without warning. The delay to each client's case undeniably gave rise to potential injury, particularly in the case of the client who chose not to pursue his lawsuit as a result of the delay.

Standard 7.1 provides for suspension when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system. Respondent abandoned his practice after accepting responsibility for at least six clients' cases. In addition to the harm those delays caused his clients, his actions certainly harmed the image of the legal profession in the eyes of those six clients.

One aggravating factor, as listed in Standard 9.22, is present. Respondent was informally reprimanded in 1990.

Were there no mitigating factors involved, the recommended sanction would likely be a suspension. However, the committee and the Commission believe that the extensive mitigating factors present in the instant case merit reevaluation of Respondent's actions in a new light.

Mitigating factors, in general, are listed in Standard 9.32. Specifically, Standard 9.32(c) lists personal or emotional problems as mitigating factors. During the winter and spring of 1987, Respondent was operating under enormous stress. Beginning in January, 1987, four men began threatening Respondent's life and the life of his mother unless they were paid $30,000 by Respondent. When Respondent paid them the money, they demanded an additional $30,000, again under threat of death. Additional sums were later demanded. In an effort to protect himself and his mother, Respondent left the state for California in April of 1987. Respondent eventually sought the help of the FBI, and, in June of 1987, participated in a payoff at Los Angeles International Airport, where the four men were arrested when they attempted to take money from Respondent. The stress associated with these incidents understandably took its toll on Respondent.

During the period when Respondent was being victimized by the extortionists and for at least one year thereafter, Respondent became agoraphobic, rarely leaving his home, and appears to have been unable to adequately function as a lawyer. After that time, however, Respondent returned to the practice of law and appears to have been psychologically able to practice law. Both the committee and the Commission have determined that, in light of psychologist Call's extensive evaluation of Respondent, he is not currently suffering from any kind of psychological impairment that would adversely impact on his ability to practice law.

Respondent's conduct towards those six clients referenced herein fell below the minimum standards required of lawyers in this state. Specifically, Respondent did not take adequate steps during that time to make certain that the needs of those clients were adequately covered by other attorneys. For this, Respondent should be sanctioned. However, "[t]he object of disciplinary proceedings is not to punish the lawyer, but to protect the public and deter similar conduct by others." *In re Rivkind,* 164 Ariz. 154, 155, 791 P.2d 1037 (1990). In formulating the appropriate recommendation, consideration must be given that Respondent, through no fault of his own, was, himself, a victim who believed his very life was in jeopardy. For these reasons and those stated above, the Commission believes a public censure and two years' probation are the appropriate sanction.

Respectfully submitted this 15th day of Nov., 1991.

/s/ Larry W. Suciu
Larry W. Suciu, Chairman
Disciplinary Commission