838 P.2d 1275

**In the Matter of a Member of the State Bar of Arizona, Laurie Ann LAWS–COATS, Respondent.**

**No. SB–92–0044–D.**
**Comm. No. 89–0518.**

Supreme Court of Arizona
Before the Disciplinary Commission.

Oct. 22, 1992.

Brian Holohan, Phoenix, for respondent.

Robert W. Haskin, State Bar Counsel, Harriet L. Turney, Chief Bar Counsel, Phoenix, for the State Bar of Arizona.

JUDGMENT AND ORDER
OF SUSPENSION &
PROBATION

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal therefrom having been filed, and the Court having declined *sua sponte* review,

IT IS ORDERED, ADJUDGED AND DECREED that LAURIE ANN LAWS–COATS, a member of the State Bar of Arizona, is hereby suspended from the practice of law for a period of one year, during which the respondent shall remain under the care of a certified psychologist or psychiatrist acceptable to the State Bar, effective as of October 20, 1992, for conduct in violation of her duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that LAURIE ANN LAWS–COATS shall be placed on probation for a two-year period upon reinstatement, under the following terms and conditions:

1. In the event LAURIE ANN LAWS–COATS desires to resume the practice of law in any capacity other than as an associate in a law firm with ten or more practicing lawyers:

a. The respondent must meet and confer periodically with an independent and reputable law practice monitor concerning all cases in which she is involved and all billing generated by her, or by individuals to whom she provides direction or supervision. In no event shall these meetings take place less frequently than once every three months; and

b. The respondent must subject her law practice to an audit by a reputable and independent auditor no less frequently than once every six months.

2. The respondent shall attend no less than ten hours of continuing legal education.

3. Upon completion of the probationary period, LAURIE ANN LAWS–COATS shall submit evidence of having successfully fulfilled the requirements and conditions set forth, and shall provide such further information as the hearing committee and Disciplinary Commission deem appropriate.

IT IS FURTHER ORDERED that pursuant to Rule 63(a), Rules of the Supreme Court of Arizona, LAURIE ANN LAWS–COATS shall notify all of her clients, within ten (10) days from the date hereof, of her inability to continue to represent them and that they should promptly retain new counsel, and shall promptly inform this court of her compliance with this Order as provided by Rule 63(d), Rules of the Supreme Court of Arizona.

IT IS FURTHER ORDERED that pursuant to Rule 52(a)(8), Rules of the Supreme Court of Arizona, the State Bar of Arizona is granted judgment against LAURIE ANN LAWS–COATS for costs incurred by the State Bar of Arizona in the amount of $457.10, together with interest at the legal rate from the date of this judgment.

EXHIBIT A

BEFORE THE DISCIPLINARY
COMMISSION

OF THE

SUPREME COURT OF ARIZONA

In the Matter of

LAURIE ANN LAWS–COATS,

a Member of the State

Bar of Arizona, Respondent.

Comm. No. 89–0518

DISCIPLINARY COMMISSION REPORT

Filed June 9, 1992

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on April 11, 1992. Oral argument having been waived by stipulation, the Commission reviewed the hearing committee's recommendation of approval of the agreement for discipline by consent providing for suspension and probation.

### Decision

After review of the record on appeal, the Commission, by a unanimous vote of seven aye,[1] adopts the committee's recommendation of acceptance of the agreement for discipline by consent providing for (1) a one year suspension, during which Respondent shall remain under the care of a certified psychologist or psychiatrist acceptable to the State Bar; and (2) a two-year period of probation upon reinstatement, under the terms and conditions set forth herein. Additionally, the Commission unanimously adopts the committee's recommendation that Respondent shall pay all costs and expenses incurred by the State Bar in the processing of this matter. The Commission also unanimously adopts the agreement for discipline by consent and the memorandum in support of consent decree as its findings of fact and conclusions of law.

### Terms of Probation

After completion of the term of suspension recommended herein, and upon reinstatement under Ariz.R.Sup.Ct., Rules 71 and 72, the Commission recommends probation for a term of two years, as previously stated, under the following terms and conditions:

1. In the event Respondent desires to resume the practice of law in any capacity other than as an associate in a law firm with ten or more practicing lawyers:

a. Respondent must meet and confer periodically with an independent and reputable law practice monitor concerning all cases in which she is involved and all billing generated by her, or by individuals to whom she provides direction or supervision. In no event shall these meetings take place less frequently than once every three months; and

b. Respondent must subject her law practice to an audit by a reputable and independent auditor no less frequently than once every six months.

2. Respondent shall attend no less than ten hours of continuing legal education.

3. Upon completion of the probationary period, Respondent shall submit evidence of having successfully fulfilled the requirements and conditions set forth, and shall provide such further information as the hearing committee and Disciplinary Commission deem appropriate.

### Facts

Respondent was retained by a client and the client's business partner concerning a dispute they were having with a company with whom they had contracted to purchase special mobile radio (SMR) antennas for two-way radios. Although an FCC license was required to operate the SMR's, the clients had been unable to obtain FCC approval. The clients maintained they had purchased the SMR's in reliance upon the supplier's representation that it would obtain the license for them.

---

1. Commissioners Hoffman and Swick did not    participate in these proceedings.

Respondent was initially retained to assist the clients in obtaining the license. When the FCC refused to grant the license, Respondent made a demand upon the supplier to return her clients' money. The supplier would only agree to refund the purchase price minus a 25% restocking fee.

Respondent states that when she talked to her clients about the feasibility of instituting a lawsuit against the supplier, she advised her clients of the risks and costs involved; the clients claim neither the risks nor the costs were discussed. Notwithstanding the substance of that discussion, the clients decided to pursue the lawsuit.

The suit, instituted against the supplier and the law firm involved in the initial transaction, alleged fraud, negligence, breach of contract, and malpractice. A charge of racketeering was later added. The lawsuit was a nasty one, and involved voluminous files and many disputes. In fact, a protective order was issued providing that the supplier need not provide certain documents Respondent had requested. Additionally, sanctions were imposed against Respondent for engaging in abusive discovery tactics.

Thereafter, both defendants filed motions for summary judgment and, after lengthy responses and oral argument, both motions were granted in their entirety.

The judge imposed nearly $135,000 in attorneys' fees and costs against Respondent. Respondent thereafter filed a petition for bankruptcy, and the judgment was discharged.

For work she performed on the FCC licensing matter and the litigation, and for general business advice, Respondent charged her clients over $700,000. Her clients filed a malpractice action against her and, as of the date of the consent agreement, were negotiating a settlement of their claims.

The complaint charges Respondent with violations of ER 1.1, ER 1.4, ER 1.5, ER 3.1, ER 3.2, ER 3.4(d), ER 8.2(a), and ER 8.4(a), (c), and (d). In the agreement for discipline Respondent admits to violating only ER 1.4 and ER 1.5; however, the State Bar, in the memorandum in support of the agreement, agrees to dismiss the remaining charges.

### Discussion of Decision

The hearing committee recommends that the agreement be accepted, and finds that Respondent's actions violated ER 1.4, when she failed to explain the matter to her clients to the extent reasonably necessary to permit them to make informed decisions regarding the representation, and ER 1.5, when she charged her clients an unreasonable fee in light of the amount of money involved in the lawsuit and the results obtained. The committee recommends that the remaining violations charged in the complaint be dismissed. The Commission agrees.

In determining the appropriateness of a disciplinary sanction, the Commission finds it helpful to review the American Bar Association's *Standards for Imposing Lawyer Sanctions*. This is the guideline used by the supreme court. *In re Rivkind*, 164 Ariz. 154, 157, 791 P.2d 1037, 1040 (1990). The Standards indicate suspension is the proper sanction.

Standard 4.42 provides for suspension when a lawyer engages in a pattern of neglect and causes injury or potential injury to a client. The comment to Standard 4.42 states, "Most cases involve lawyers who do not communicate with their clients." Respondent's failure to communicate with her client was due to negligence, and resulted in the defendants prevailing on summary judgment.

Standard 7.2 provides for suspension when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system. Respondent has a duty to the profession to charge clients fees that are in accordance with the services she provides. Fees in excess of $700,000 for matters which result in summary judgment in favor of both defendants is a breach of that duty.

A number of the factors which may be considered in mitigation, as listed in Stan-

dard 9.32, are present in the instant case. Respondent has no prior disciplinary record, and is suffering from severe emotional and personal problems. In addition, Respondent's willingness to agree to the sanctions proposed in the agreement for discipline expressly to demonstrate her "genuine desire to avoid a situation like this in the future,"[2] is evidence of her remorse. No factors in aggravation were found by the committee or Commission.

The memorandum in support of consent decree indicates that, in the opinion of Respondent's doctor, Respondent is suffering from severe depression to the extent that she is disabled. In light of this, the Commission considered the possibility of transferring Respondent to disability inactive status rather than accepting the agreement. However, the Commission believes that the joint agreement for discipline by consent is an indication that Respondent prefers to handle her problems in this manner.[3] In addition, the Commission acknowledges that, under the proposed sanctions, Respondent will be unable to practice law for at least one year, during which time she must remain under a doctor's care. This will ensure that Respondent obtains the care she needs, and at the same time will prevent Respondent from practicing if she is disabled; the recommended period of suspension is for more than six months, therefore, Respondent must reapply before being reinstated, pursuant to Ariz.R.Sup. Ct., Rules 71 and 72.

Upon reinstatement, Respondent has agreed to be subject to the provisions of a two-year probation, which provides for additional continuing legal education hours and, in certain circumstances, a law practice monitor. The Commission believes that accepting the agreement for discipline by consent will achieve the same goals as would a transfer to disability inactive status at this time.

In *In re Pappas*, 159 Ariz. 516, 768 P.2d 1161 (1988), the Court stated "In imposing lawyer sanctions, we are guided by the principle that 'the purpose of bar discipline is not to punish the lawyer but to deter others and protect the public.'" 159 Ariz. at 526, 768 P.2d at 1171 (quoting *In re Kersting*, 151 Ariz. 171, 726 P.2d 587 (1986)).[4] The Commission believes that, despite the existence of mitigating and the lack of aggravating factors, the suspension and probation recommended herein will serve the purpose of discipline, and will encourage Respondent to obtain assistance for the emotional and financial problems that led to her misconduct. The Commission also notes that Respondent has agreed to this sanction. Therefore, the Commission recommends that the agreement for discipline providing for suspension and probation be accepted, and that Respondent pay all costs and expenses incurred by the State Bar in the processing of this matter.

/s/  <u>Larry W. Suciu</u>
Larry W. Suciu
Chairman

---

2. Memorandum in Support of Consent Decree, p. 7.

3. The affidavit provided by her current psychiatrist confirms that Respondent is competent to make that choice.

4. The memorandum in support of consent decree indicates that one of the purposes of discipline is punishment. The Commission disagrees, particularly in light of comments such as this by the Court.