789 P.2d 1049

**In the Matter of a Member of the State Bar of Arizona,**

**RuthAnne TARLETZ, Respondent.**

**No. SB–88–0041–D.**

Supreme Court of Arizona,
In Banc.

March 12, 1990.

RuthAnne Tarletz, Phoenix, pro se.

State Bar of Arizona by Harriet L. Turney, Chief Counsel, Phoenix.

CAMERON, Justice.

## I. JURISDICTION

The Disciplinary Commission of the Supreme Court of Arizona (Commission) rec-

ommends that respondent RuthAnne Tarletz (Tarletz) be suspended and disbarred. We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and 17A A.R.S. Sup.Ct. Rules, Rule 53(e).

## II. PRELIMINARY STATEMENT

This case involves multiple allegations of unethical conduct by Tarletz that occurred between 1983 and 1986. The State Bar of Arizona (Bar) filed two complaints against Tarletz. The first complaint, considered by Hearing Committee 3A, concerned conduct that occurred when the former Code of Professional Responsibility was in effect. 17A A.R.S. Sup.Ct. Rules, Rule 29. The second complaint, considered by Hearing Committee 6I, concerned conduct that occurred after the effective date of the Rules of Professional Conduct which were adopted on 2 August 1983. 17A A.R.S. Sup.Ct. Rules, Rule 42.

In disciplinary proceedings, we sit as an independent trier of fact and law in the exercise of our supervisory responsibility over the Bar and its members. *In re Pappas*, 159 Ariz. 516, 518, 768 P.2d 1161, 1163 (1988). On review of the facts, we give deference and serious consideration to the findings and recommendations of both the Committee and the Commission. *Id.* The burden of proof, however, remains on the Bar to prove by clear and convincing evidence that the respondent violated his or her ethical obligations. *Id.* Before we can impose discipline, the evidence must convince us that it was highly probable that the respondent committed professional misconduct. *Id.*

## III. COMPLAINT ONE

The Bar filed its first complaint on 21 May 1986. The complaint contained six counts of alleged misconduct that centered on Tarletz's failure to properly and competently represent her clients.

Formal disciplinary proceedings were delayed and continued several times over the next year. Initially, Tarletz and the Bar filed an agreement for discipline by consent, agreeing to a seven-month suspen-

sion. Several months later, however, Tarletz withdrew her consent. Another delay occurred when the Bar filed a motion for interim suspension because it believed that allowing Tarletz to continue practicing law would result in "substantial harm and loss and damage to the public and to the legal profession and to the administration of justice." This court denied that motion. In the meantime, Tarletz was suspended from the practice of law for non-payment of dues on 2 June 1987 and remains suspended.

Hearing Committee 3A began hearings in this matter in June and July of 1987. Tarletz represented herself. On the third day of the proceedings, the Committee became concerned with Tarletz's demeanor and performance as an attorney. Specifically, the Committee was concerned about Tarletz's constant confusion and disorganization while examining witnesses, her constant shuffling of papers at her table, the dozens of pills she laid out on her table which she occasionally ingested, and her sudden outburst while a judge was testifying where Tarletz jumped up, slammed her hands on the table and called the judge a liar. The Committee moved to place Tarletz on disability inactive status under Rule 59(d), 17A A.R.S. Sup.Ct. Rules. The Commission, however, denied this motion because Tarletz herself made no claim of incapacity. The Committee finally concluded the hearing on 29 October 1987.

The Committee made findings of fact and conclusions of law with respect to the six counts in the first complaint.

*Count One.* Dr. Bruce Winters (Winters), a resident of California, was an optometrist who leased department store space in Arizona from Fed–Mart Stores, Inc. (Fed–Mart), a California corporation. On 5 May 1982, Fed–Mart terminated its lease with Winters pursuant to a "90–Day Termination Provision" in the lease. Tarletz learned of Winters' predicament through mutual friends and solicited him by telephone to participate in a class action lawsuit against Fed–Mart on behalf of Winters and three other plaintiffs/lessees. Tarletz's contact with Winters was solely by letter or phone and she came into per-

sonal contact with him only once, which was at his deposition.

Tarletz misrepresented the Fed–Mart matter to Winters in several ways. First, she never filed a class action suit. Second, she never explained to Winters that he might be liable for unpaid rent or costs and attorney's fees should Fed–Mart prevail. Third, she failed to discuss with Winters any weaknesses in the case and completely ignored any conflict of law issues pertaining to Winters.

Tarletz also failed to handle the matter properly and competently. During pre-trial depositions, Fed–Mart's attorney made a settlement offer to Tarletz proposing that each side drop their claims and pay their own costs. Tarletz failed to inform Winters or the other plaintiffs of this offer. Instead, she told Fed–Mart's attorney a few days later that the plaintiffs would settle for $150,000.

Next, Fed–Mart filed a motion for summary judgment on its counterclaim for unpaid rent and a response to plaintiff's motion for summary judgment. Tarletz meanwhile filed bankruptcy petitions on behalf of two of the other plaintiffs, the Golds and the Warshauers. She failed, however, to file a response to Fed–Mart's motion for summary judgment. Apparently, Tarletz believed that telling the trial judge she had filed a bankruptcy petition for two of the plaintiffs was a sufficient response to Fed–Mart's motion for summary judgment and that this notification would automatically stay the proceedings as to all plaintiffs. The trial judge granted Fed–Mart's motion and entered a judgment against Winters for $15,000 in attorney's fees, $1,002.20 in costs and $4,474.24 in unpaid rent. Tarletz did not appear at this judgment hearing and the court had to telephone her. Winters eventually paid the entire judgment because two of the plaintiffs filed bankruptcy petitions and the other one settled with Fed–Mart.

Finally, we note that Tarletz unsuccessfully attempted to withdraw as Winters' counsel just prior to the final judgment in this matter. This would have left Winters completely on his own.

The Committee concluded that Tarletz's course of conduct in representing Winters violated former DR 6–101 (Failing to Act Competently) and DR 7–101 (Representing a Client Zealously).

*Count Two.* Dr. Barry Blonder (Blonder), an Arizona resident and optometrist, also leased store space from Fed–Mart in Arizona. Tarletz solicited him by letter with an enclosed retainer agreement asking him if he too would like to join in a class-action suit against Fed–Mart.

As she did with Winters, Tarletz failed to inform Elonder of his liability for any unpaid rent and costs or attorney's fees should the claim prove unsuccessful. Tarletz also failed to file the matter as a class action and failed to convey to Blonder the settlement offer made by Fed–Mart's attorney.

Independent of the Committee's findings, the record shows Fed–Mart sent interrogatories to Tarletz for Blonder to answer and she never notified him. Also, Blonder missed his deposition because Tarletz failed to inform him of the time and place. Fed–Mart then filed for sanctions against Blonder. Blonder finally obtained other counsel and settled the matter with Fed–Mart for $2000. Blonder was then dismissed from the matter.

Again, the Committee found that Tarletz's conduct in representing Blonder violated former DR 6–101 (Failure to Act Competently) and DR 7–101 (Representing a Client Zealously).

*Count Three.* Tarletz was appointed on 13 September 1983 to represent the Whiley children in a dependency proceeding. By 5 January 1984, Tarletz had yet to meet with the children. She was ordered to appear in juvenile court on 17 January 1984 to show cause why she should not be held in contempt in regard to this matter. Tarletz appeared and was ordered to submit a letter stating what type of custodial arrangement would be in the best interests of the children. Tarletz filed the letter with the court on 8 February 1984. Tarletz was one hour late for a report and review hearing on the Whiley custody matter on 4 April

1984. At the next two hearings, Tarletz's presence was by conference telephone only.

On 4 January 1985, Judge C. Kimball Rose ordered Tarletz to respond on all matters concerning the Whiley children. On 28 January, after repeated delay, Tarletz eventually reported to Judge Rose. On 31 January 1985, Judge Rose replaced Tarletz as counsel on the basis of inadequate representation.

The Committee found that Tarletz failed to competently and zealously represent the Whiley children in violation of former DR 6–101 (Failing to Act Competently) and DR 7–101 (Representing a Client Zealously).

*Count Four.* Tarletz represented Larry and Carol Gold (the Golds) in both the Fed–Mart matter and in an action for unpaid attorney's fees filed by Victor Garnice against the Golds in March 1983. Tarletz failed to answer the complaint and a default judgment was obtained against the Golds. In September 1983, Tarletz filed a motion to set aside the default judgment. She never told the Golds that she failed to answer, that a default judgment was entered against them, or that she filed a motion to set aside the default judgment. The Golds first learned of the default judgment, much to their surprise, on 30 January 1984 when they were served with notice to appear at a judgment debtor's examination. Eventually, the Golds obtained another attorney to represent them.

The Committee concluded that Tarletz failed to provide effective representation in violation of former DR 6–101 (Failing to Act Competently) and DR 7–101 (Representing a Client Zealously).

*Count Five.* The Golds considered filing for bankruptcy. In anticipation of the Golds' impending bankruptcy, Tarletz advised them to put all of their property in a trust for their children. Tarletz prepared a document in November 1983 entitled "The Jill and April Living Trust", dated 18 March 1983. Tarletz's spouse, Nelson Siegel, notarized the instrument as executed and acknowledged on 18 March 1983 when, in fact, it was executed in November 1983. The trust was recorded in November and Tarletz filed a Chapter 13 bankruptcy petition for the Golds in December.

The Committee concluded that Tarletz knowingly backdated the trust and that she violated former DR 6–101 (Failing to Act Competently) and DR 7–102 (Representing a Client Within the Bounds of the Law).

*Count Six.* In December 1983, Tarletz filed Chapter 13 petitions in bankruptcy court on behalf of Mr. and Mrs. Hilton Warshauer (the Warshauers) and the Golds. The Warshauers never authorized the filing of their bankruptcy petition and Tarletz forged their names on their petition. After the Golds' and the Warshauers' petitions were filed, the bankruptcy judge ordered both to provide additional information in order for their petitions to comply with the bankruptcy rules. Once again, Tarletz failed to provide sufficient information to the court and failed to keep her clients adequately informed. Eventually, the Golds and the Warshauers sought new counsel to proceed with their bankruptcy proceedings. Their new attorney immediately moved the court to convert the Chapter 13 proceedings into Chapter 7 proceedings.

The Committee concluded that Tarletz violated former DR 6–101 (Failing to Act Competently), DR 6–102 (Limiting Liability to a Client) and DR 7–102 (Representing a Client Within the Bounds of the Law).

*Additional Findings.* The Committee also made the following specific findings with regard to the proceedings:

> The Committee finds that, generally, the testimony of Respondent was not credible. The Committee further specifically finds that in response to most, if not all, of the allegations and complaints against her, the Respondent consistently blamed someone else and took the position that it was always someone else's fault.

In summary, the Committee found six violations of former DR 6–101 (Failing to Act Competently) which stated:

> (A) A lawyer shall not:
>
> \*    \*    \*    \*    \*    \*

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to him.

The Committee found one violation of former DR 6–102 (Limiting Liability to a Client) which stated:

(A) A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice.

The Committee found four violations of former DR 7–101 (Representing a Client Zealously) which stated:

(A) A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules ...

Finally, the Committee found two violations of former DR 7–102 (Representing a Client Within the Bounds of the Law) which stated:

(A) In his representation of a client, a lawyer shall not:

\*     \*     \*     \*     \*     \*

(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.

(4) Knowingly use perjured testimony or false evidence.

(5) Knowingly make a false statement of law or fact.

(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.

Committee 3A filed its Report on 2 January 1988 recommending a two-year suspension for violations of former Rule 29(a), Rules of the Supreme Court. Tarletz objected.

We agree with Committee 3A that Tarletz violated the former Code of Professional Responsibility as alleged in Complaint One. The Bar presented a lengthy and thorough case against Tarletz. Her defense, on the other hand, was confusing, disorganized and often irrelevant in addressing the ethical violations at issue in this complaint. We believe there is clear and convincing evidence in the record to support the Committee's findings of fact and conclusions of law.

## IV.  COMPLAINT TWO

Before Committee 3A issued its report on the first complaint, the Bar filed a second complaint against Tarletz on 9 September 1987. This complaint was assigned to Hearing Committee 6I and alleged two counts. The Bar served the complaint personally upon Tarletz and she failed to answer within the appropriate time period.

The Bar then served Tarletz with a notice of failure to answer. On 20 November 1987, the Bar hired a private process server to serve personal notice on Tarletz at her residence. She answered the door, but identified herself to the process server as Denise Bargely (Tarletz's secretary). The Committee then filed a notice of complaint deemed admitted due to Tarletz's failure to answer. Rule 53(c)(1), Sup.Ct. Rules.

A hearing before Committee 6I was held on 8 February 1988. Again, after proper notice, Tarletz failed to appear. The Committee made the following findings of fact and conclusions of law with respect to this second complaint.

*Count One.* In September 1986, Charles and Nancy Barringer retained Tarletz to file bankruptcy petitions on their behalf. The Barringers paid Tarletz a $250 retainer fee and a $60 filing fee. The Barringers signed all paperwork necessary for the petition on 13 September 1986. After several inquiries by the Barringer's, Tarletz finally filed the papers along with a Chapter 7 petition on 22 October 1986. On the same day, she sought permission from the bankruptcy court to delay paying the $60 filing fee for one week. In the "Application to Pay Filing Fee in Installments" in bankruptcy court, Tarletz indicated she received no compensation in this matter and signed Nancy Barringer's name to the application.

The Barringers did not know Tarletz failed to use their $60 for the filing fee nor did they know she had signed Mrs. Barringer's name on the application. The Barringers never authorized Tarletz to sign their names. After discovering Tarletz

was paid the filing fee and that Nancy Barringer's signatures on two separate papers were different, the bankruptcy judge ordered Tarletz and the Barringers to appear at a hearing on 5 December 1986 to consider who was responsible for false information on the application. Tarletz did not appear at that hearing.

Committee 6I found that Tarletz's conduct violated the following rules:

ER 3.3. Candor Toward the Tribunal

(a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal ...

ER 3.4. Fairness to Opposing Party and Counsel

A lawyer shall not:

\* \* \* \* \* \*

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists ...

ER 8.4. Misconduct

It is a professional misconduct for a lawyer to:

\* \* \* \* \* \*

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice

...

17A A.R.S. Sup.Ct. Rules, Rules of Professional Conduct, Rule 42, ER 3.3, ER 3.4, ER 8.4.

*Count Two.* In April 1983, Rosemary Bennett (Bennett), then known as Rosemary Golding, was involved in an auto accident. In July 1983, Bennett retained Tarletz to represent her regarding personal injuries sustained in the accident. Over the next year, Bennett sought medical attention and communicated with Tarletz regarding the medical bills. Bennett moved out of Arizona and made several attempts to get in touch with Tarletz. The last time Bennett heard from Tarletz was in October 1984.

After over a year, Tarletz tried to settle the case with the insurance carrier. Tarletz's first offer of settlement was for $150,000 in November 1984. The insurance carrier declined this offer and counter-offered for $2000. Over the next year, Tarletz gradually decreased her offer until it reached $10,000 in November 1985. The carrier countered with an offer of $2500. In December 1985, the carrier notified Tarletz that the two-year statute of limitations had run on Bennett's claim and that it was going to close its file. Once Tarletz was notified of this, she attempted to accept the carrier's previous offer of $2500. The carrier declined this acceptance.

The Committee found Tarletz's conduct violated ER 8.4(c) (Misconduct), *supra,* and the following rules:

ER 1.3. Diligence

A lawyer shall act with reasonable diligence and promptness in representing a client.

ER 1.4. Communication

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Rules of Professional Conduct, Rule 42, ER 1.3, ER 1.4.

Committee 6I filed its report on 14 March 1988, noting that Tarletz attempted to evade service, failed to answer the allegations, and was recommended for a two year suspension under Complaint One. The Committee recommended disbarment.

We agree with Committee 6I that Tarletz was guilty of ethical misconduct as alleged in Complaint Two. We give considerable weight to the Committee's findings, especially where respondent does not contest them. *In re Blankenburg,* 143 Ariz. 365, 367, 694 P.2d 195, 197 (1984). We note that Tarletz, after she was given ample notice, completely failed to respond to these matters at the proper times. On review in this

court, Tarletz filed a three-page "Opening Brief, Objections to Findings and Recommendations." We find her "brief" to be devoid of legal arguments. She argues, for example, that sole practitioners receive more discipline than attorneys in larger firms, that she never lied during any of the Bar's proceedings but others did, and that because she was bankrupt she did not pay her bar dues or hire an attorney to represent her in these matters. Similar to her defense in the first complaint, Tarletz confuses the relevant ethical issues with irrelevant issues and offers no evidence to absolve herself of any unethical conduct.

## V. COMMISSION'S ACTIONS

The two complaints were consolidated for hearing before the Commission on 20 May 1988. Once again, after proper notice, Tarletz failed to appear. The Commission adopted the findings of fact and conclusions of law of both Committees 3D and 6I stating:

> The Commission accepts and adopts the findings of fact and conclusions of law as set forth in the Committee Report of Hearing Committee 3A filed January 22, 1988, and of Hearing Committee 6I filed March 14, 1988 by a unanimous vote of the seven members considering the matter.

We believe, after reviewing the record before us, that the findings of fact and conclusions of law as to both complaints are supported in the record by clear and convincing evidence.

## VI. SANCTIONS

The Committee and the Commission recommended a two-year suspension in Complaint One (Committee 3D) and disbarment in Complaint Two (Committee 6I).

■ The main purpose of discipline is to protect the public and deter others from misconduct. *In re Fresquez*, 162 Ariz. 328, 334, 783 P.2d 774, 780 (1989). In determining the appropriate sanction in a disciplinary proceeding, we look for guidance in the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986).

*Id.* The ABA *Standards* list four factors to be considered in setting the proper discipline: (1) the duty violated, (2) the lawyer's mental state, (3) the actual or potential injury caused by the lawyer's misconduct, and (4) the existence of aggravating or mitigating factors. ABA *Standards*, Standard 3.0.

### A. Suspension

■ Committee 3D recommended that Tarletz receive a two-year suspension for multiple violations of the former Code of Professional Responsibility. Generally, absent aggravating or mitigating circumstances, suspension may be appropriate in cases involving lack of competence, lack of diligence, and conduct such as fraud or the use of false statements. *See* ABA *Standards*, Standards 4.4 (Lack of Diligence), 4.5 (Lack of Competence), and 6.1 (False Statements, Fraud and Misrepresentation). Specifically, we note the following standards as applying:

> Suspension is generally appropriate when:
> (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
> (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.
>
> \*   \*   \*   \*   \*   \*
>
> Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client.
>
> \*   \*   \*   \*   \*   \*

ABA *Standards*, Standards 4.42, 4.52.

We find the following aggravating circumstances present in this case: Tarletz's consistent pattern of misconduct, multiple disciplinary offenses, refusal to acknowledge the wrongful nature of her conduct, and the vulnerability of her clients. *See* ABA *Standards*, Standard 9.32. Tarletz's absence of a prior disciplinary record, before this first complaint, is the only mitigating factor we find. *See* Standard 9.32.

We believe a two-year suspension is the appropriate sanction under Complaint One.

*B. Disbarment*

Committee 6I recommended disbarment for Tarletz's violations of the Rules of Professional Conduct.

With respect to Tarletz's filing of the false statement and signing her client's name in bankruptcy court, we note the following:

Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

ABA *Standards*, Standard 6.11.

Regarding Tarletz's conduct in letting the two-year statute of limitations lapse on Bennett's personal injury claim, we cite the following standard as applicable:

Disbarment is generally appropriate when:

&ast; &ast; &ast; &ast; &ast; &ast;

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA *Standards*, Standard 4.41. Additionally, the *Standards* state:

Disbarment is generally appropriate when a lawyer's course of conduct demonstrates that the lawyer does not understand the most fundamental legal doctrines or procedures, and the lawyer's conduct causes injury or potential injury to a client.

ABA *Standards*, Standard 4.51

We believe disbarment is the appropriate sanction in this case because Tarletz's acts of misconduct were widespread and persistent and resulted in actual or potential injury to her clients. We note the following aggravating circumstances: a pattern of misconduct in her dealings with clients, multiple offenses in different matters, intentional failure to comply with the rules of the Committee by failing to respond to the second complaint, refusal to acknowledge that any of her conduct was wrong, and her clients' vulnerability and oblivion to her lack of competence and diligence. *See* ABA *Standards*, Standard 9.32.

We have stated with respect to disbarment:

The ultimate test is whether, in the opinion of the court which hears and determines the question, it appears that the interests of society will no longer be served by permitting him to continue to practice his profession.

*In re Greer*, 52 Ariz. 385, 391, 81 P.2d 96, 98 (1938). We believe that the interests of society are best served by disbarring Tarletz, thereby preventing her from representing future unwitting clients who may suffer injury through her representation.

## VII. ORDER

Respondent RuthAnne Tarletz is suspended for two years under Complaint One and disbarred under Complaint Two. She is also ordered to pay Bar costs in the amount of $8,089.10.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER and CORCORAN, JJ., concur.