847 P.2d 592

**In the Matter of a Member of the State Bar of Arizona, Joseph W. CHARLES, Respondent.**

No. SB–93–0005–D.

Comm. Nos. 89–0254, 89–0794.

Supreme Court of Arizona.

Feb. 16, 1993.

Kenneth J. Sherk, Phoenix, for respondent.

Nancy A. Greenlee, Phoenix, Bar Counsel.

Harriet L. Turney, Chief Bar Counsel, for the State Bar of Arizona.

**JUDGMENT AND ORDER**

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal having been filed,

IT IS ORDERED, ADJUDGED AND DECREED that JOSEPH W. CHARLES, a member of the State Bar of Arizona, is hereby censured for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that pursuant to Rule 52(a)(8), Rules of the Supreme Court of Arizona, the State Bar of Arizona is granted judgment against JOSEPH W. CHARLES for costs incurred by the State Bar of Arizona in the amount of $2,509.33, together with interest at the legal rate from the date of this judgment.

EXHIBIT A

BEFORE THE DISCIPLINARY COMMISSION

OF THE

SUPREME COURT OF ARIZONA

Comm. Nos. 89–0254 and 89–0794.

In the Matter of

JOSEPH WILLIAM CHARLES,

a Member of the State

Bar of Arizona, RESPONDENT.

DISCIPLINARY COMMISSION REPORT

[Filed Dec. 11, 1992.]

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on October 17, 1992, pursuant to Rule 53(d), R.Ariz.Sup.Ct., for oral argument on the hearing committee's recommendation of censure. Respondent filed an objection to the hearing committee's recommendation.

*Decision*

After consideration of the arguments of Respondent and the State Bar, and review of the record on appeal, the Commission, by a vote of seven to one,[1] adopts the committee's recommendation, and orders that Respondent be censured. The Commission unanimously adopts the committee's findings of fact and conclusions of law.

*Facts*

Respondent had handled legal matters for Client A, a lifetime friend, generally

---

**1.** Commissioner Swick did not participate in these proceedings. Commissioner Hoffman dissented, in the belief that Respondent's misrepre-

sentations and the resultant injury to the estate dictate some length of suspension as the appropriate sanction.

without compensation since first becoming an attorney. Client A had executed general powers of attorney making Respondent his attorney in fact. Over the last ten years of Client A's life, Respondent prepared a number of wills for him.

In a will drafted just eleven days before Client A died, Client A named Respondent personal representative of his estate. That will also named Respondent trustee under a trust agreement set up for the specific purpose of support, health, maintenance, and education of children. However, one week later, Client A requested that Respondent draft a new will which did not provide for a trust agreement. Rather, this will devised the bulk of the estate to Respondent "for the purpose of assisting and helping others with their education." Respondent was again named personal representative. This will was in effect at the time of Client A's death.

The charges in the complaint arise out of Respondent's handling of various aspects of the estate matters of Client A. Prior to Client A's death, while he was in the hospital, hospital employees requested documentation from Respondent showing his relationship to their patient. In response, Respondent brought to the hospital a blank power of attorney, already notarized by his secretary, for Client A's signature. When he arrived, however, Client A was asleep. As the hospital employees were pressing Respondent for this documentation, Respondent himself signed Client A's name to the document in order to avoid waking his extremely ill friend, and presented it to the hospital. This power of attorney was identical to one already signed by Client A, but Respondent wanted to keep the original that was in his possession. There is no evidence that the power of attorney given to the hospital was used by the hospital for any purpose other than to indicate Respondent's relationship to Client A. It was not used to the detriment or disadvantage of Client A.

Twelve days after Client A's death, Respondent visited Client A's bank and transferred funds from one of the client's accounts into a joint account held by Client A and Respondent, which Respondent had opened earlier that same day. Although there was conflicting testimony on this issue, the committee found that Respondent used a power of attorney to perform these transactions. The committee also found that that power of attorney, which was not the one presented to the hospital, was also not signed by Client A. Respondent had again signed Client A's name.

During these transactions, Respondent did not inform the bank that the joint holder of the account, the individual whose power of attorney he was presenting, was dead. Regardless of whose signature was on the power of attorney, it was revoked by Client A's death. The committee notes that this transfer of funds, although appearing to benefit Respondent, was done solely in furtherance of Client A's wishes that the monies intended for the children generate the highest return of interest possible. Respondent did not in any way gain from the transfer.

The committee found that, by twice presenting powers of attorney signed by Respondent instead of Client A, and by using a power of attorney which he knew was revoked by Client A's death, Respondent violated ER 8.4(c).

Some months after Respondent filed the petition for formal probate of his friend's estate, Client A's sisters filed a petition for removal of Respondent as personal representative, alleging, among other things, neglect of his duties, including failure to marshall estate assets, failure to make a timely inventory of the assets, and conflict of interest. The Superior Court denied the motion after a three and a half day trial.

Although Respondent prevailed, the litigation resulted in the estate bearing the attorney's fees incurred by Respondent in the litigation to remove him as personal representative, as well as those fees incurred in the administration of the estate. In addition, the settlement arrived at between Respondent and the deceased's sisters provided one of the sisters with an amount from her brother's estate which was nearly nine times the initial bequest.

Unfortunately, the result of this squabbling was to substantially reduce the amount of money ultimately available to fulfill Client A's final wishes to educate needy children.

Although additional violations were charged in the complaint stemming from these and other facts, the committee found they were not proven by clear and convincing evidence.

### Discussion of Decision

ER 8.4(c) states, in part, "it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Signing Client A's name on powers of attorney naming himself as attorney in fact was dishonest, notwithstanding the fact that Respondent intended no personal gain. The potential for fraud is obvious. Respondent also knowingly presented one of those powers of attorney to the bank twelve days after the client's death. The Commission does not believe Respondent's actions were intended for any purpose other than to further his friend's wishes regarding the distribution of his estate, which his friend had made very clear to him over the years. However, it would be impossible not to recognize that this conduct involved misrepresentation and dishonesty.

There is no doubt that Respondent exercised poor judgment in handling his friend's estate. The immediate example of that poor judgment is his agreement to handle the estate at all. Respondent should have seen the potential conflict of interest involved in attempting to provide objective advice on estate planning to a lifelong friend. In addition, the inherent conflict of interest involved in drafting a will containing bequests to the drafter should have been immediately apparent to Respondent.

An especially troubling aspect of this matter is the end result. According to Respondent, Client A was adamant throughout his dealings with Respondent that only a small portion of his estate go to friends and relatives; the majority of the money was to go toward the education of children with financial need. The appearance of impropriety created by Respondent's misguided attempts to achieve that very goal, however, resulted in the amount of money available for that purpose being reduced by hundreds of thousands of dollars.

In determining the appropriate sanction, the Court looks for guidance in the American Bar Association's *Standards for Imposing Lawyer Sanctions. In re Tarletz*, 163 Ariz. 548, 789 P.2d 1049 (1990). The Commission uses that guideline, as well.

Standard 5.1 addresses a lawyer's failure to maintain personal integrity. Standard 5.12 provides for suspension when criminal conduct is involved. Standard 5.13 provides for reprimand (censure in Arizona) when a lawyer knowingly engages in any other conduct[2] that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law. As stated above, although Respondent had no improper intent, signing someone else's name to a document and passing it off as an authentic signature is both dishonest and a misrepresentation. While he did not have the criminal intent necessary to warrant suspension, Respondent's apparent belief that "the end justifies the means" simply does not relieve him of his responsibility to maintain his integrity.

The Commission was somewhat surprised by Respondent's oral argument before the Commission, in which he argued for a dismissal or informal reprimand rather than the censure recommended by the committee. The Commission believes the choice in this matter is not between a censure and a lesser sanction but, rather, between a censure and some period of suspension. The purpose of lawyer discipline is not to punish the lawyer, but to protect the public, the profession, and the administration of justice. *In re Pappas*, 159 Ariz.

---

**2.** Standards 5.11(a) and 5.12 concern criminal conduct. Standard 5.11(b) concerns intentional conduct involving dishonesty, fraud, deceit, or misrepresentation.

516, 768 P.2d 1161 (1988). The poor judgment exhibited by Respondent throughout this matter and the serious consequences that resulted make a lesser sanction inappropriate.

Standards 9.22 and 9.32 list factors to be considered in aggravation and mitigation, respectively. No aggravating factors were found. In mitigation, Respondent has no prior disciplinary history and had no selfish motive. The Commission placed great weight on the fact that Respondent's judgment was obviously clouded by the fact that he was dealing with a client with whom he had a virtual father/son relationship. Whether Respondent recognized the conflict of interest or not, the relationship between the two makes it apparent his motives were pure.

This case represents an especially troubling set of circumstances, given the apparent lack of any improper intent on the part of Respondent. Respondent clearly allowed his relationship with his client to affect his actions as a lawyer. The disciplinary process cannot ignore the bad consequences of his actions when coupled with his inadequate handling of the matter. Were it not for the mitigating factors, the Commission may well have recommended that Respondent be suspended. However, in light of the extenuating circumstances, the Commission believes a censure will serve the goal of discipline, and so orders.

Notwithstanding the foregoing, one can leave this case with substantial sympathy for Respondent and the price he has had to pay for his conduct. Every lawyer must recognize that, while representing a friend or relative, he still has an attorney/client relationship. No lawyer can or should justify improper conduct, vis-a-vis a client, on the basis of his or her relationship with that client.

/s/ Raymond W. Brown
Raymond W. Brown,
Chairman