854 P.2d 776

**In the Matter of a Member of the State Bar of Arizona, Charles Ray BROOKS, Respondent.**

**No. SB–93–0029–D.
Comm. No. 90–0042.**

Supreme Court of Arizona.

June 17, 1993.

Allen B. Shayo, State Bar Counsel and Harriet L. Turney, Chief Bar Counsel, Phoenix, for State Bar of Arizona.

### JUDGMENT AND ORDER

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal therefrom having been filed, and the Court having declined *sua sponte* review,

IT IS ORDERED, ADJUDGED AND DECREED that **CHARLES RAY BROOKS,** a member of the State Bar of Arizona, is hereby suspended from the practice of law for a period of thirty (30) days for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that **CHARLES RAY BROOKS** shall be placed on probation for a period of two years, under the following terms and conditions:

1. Respondent shall, at his own expense, make arrangements to submit to the Law Office Management Assistance Program of the State Bar of Arizona;

2. Respondent shall have a "practice monitor"—an attorney who will supervise Respondent's trust account and trust account procedures. The practice monitor will agree to report to the State Bar any manifestations of behavior similar to that which resulted in this disciplinary matter, or conduct falling below minimum standards of the profession as set forth in the Rules of Professional Conduct, Rule 42, R.Ariz.S.Ct.; and

3. Respondent shall pay any costs incurred in connection with his practice monitor while on probation.

IT IS FURTHER ORDERED that **CHARLES RAY BROOKS** shall pay the costs of these proceedings in the amount of $1,640.69.

EXHIBIT A

BEFORE THE DISCIPLINARY
COMMISSION

OF THE

SUPREME COURT OF ARIZONA

Comm. No. 90–0042

In the Matter of

Charles Ray Brooks,

a Member of the State

Bar of Arizona,

Respondent.

## DISCIPLINARY COMMISSION REPORT

[Filed March 10, 1993.]

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on January 9, 1993, pursuant to Rule 53(d), R.Ariz.Sup.Ct., for oral argument on the Hearing Committee's recommendation of informal reprimand. The State Bar filed an objection to the Hearing Committee's recommendation.

### Decision

The Commission, by a vote of seven to two,[1] rejects the Committee's recommendation that Respondent be informally reprimanded, and recommends that Respondent be suspended for a period of thirty days and that he be placed on probation for a period of two years, under the terms and conditions set forth herein. By the same vote, the Commission rejects the Committee's recommendation that Respondent be assessed only one-half of the costs of these proceedings, and recommends that he be assessed all the costs of the proceedings. By a unanimous vote of nine aye, the Commission accepts the Committee's findings of fact and conclusions of law.

1. Commissioners Doyle and Maim dissented. See Dissenters' Comments, below.

2. Apparently, Clients A believed that if they received this money, they would have assets over

### Probation

After completion of the term of suspension recommended herein, the majority of the Commission recommends probation for a term of two years, as previously stated, under the following terms and conditions:

1. Respondent shall, at his own expense, make arrangements to submit to the Law Office Management Assistance Program of the State Bar of Arizona; and

2. Respondent shall have a "practice monitor"—an attorney who will supervise Respondent's trust account and trust account procedures. The practice monitor will agree to report to the State Bar any manifestations of behavior similar to that which resulted in this disciplinary matter, or conduct falling below minimum standards of the profession as set forth in the Rules of Professional Conduct, Rule 42, R.Ariz.S.Ct.

3. Respondent shall pay any costs incurred in connection with his practice monitor while on probation.

### Facts

Respondent was retained by a husband and wife ("Clients A") in 1983 to represent them in a condemnation matter involving their home and business. In early 1984, Respondent negotiated an agreement with ADOT on behalf of Clients A, pursuant to which ADOT paid approximately $44,000 to Respondent on behalf of his clients. Out of that sum, Respondent subtracted his fee and disbursed an amount to purchase new property for Clients A. This left a balance of $4,517, which Respondent placed in his trust account for Clients A. Clients A instructed Respondent to hold the $4,517 in his trust account until they requested it, so that they could continue to receive Social Security and/or AHCCCS benefits.[2] Respondent agreed to hold the money, and wrote a letter to the Social Security Admin-

the eligible asset base, and would no longer be eligible for the benefits they were currently receiving.

istration confirming that Clients A had no access to his trust account.[3]

In early 1984, Respondent sent a letter to Clients A confirming their arrangement, setting forth the breakdown of how his fees had been applied to the settlement, and stating that he would hold the $4,517 in his account until Clients A requested it.[4] After 1984, there was no communication between Respondent and Clients A until 1990, when the clients contacted Respondent and requested their money.

Respondent did not send any reminder notices to Clients A in the period between 1984 and 1990 stating that he was holding their money. Respondent knew that the clients were fully aware that he was holding their money, at their request; therefore, he saw no reason to send reminder notices stating that he was still holding the money. Respondent also knew that the clients were nearly impossible to contact. They had no telephone and, for some period of time, the husband was living in his truck. In addition, the clients lived in Buckeye, which was a lengthy drive from Respondent's office.

The testimony at the hearing was conflicting concerning what occurred after Clients A requested their money in 1990. The Committee found that Respondent attempted to return the money to Clients A, but they refused to accept it. Subsequently, a dispute arose over the money and over the amount of the fee Respondent charged Clients A in 1984. This dispute ultimately was settled, and Respondent returned the $4,517 in full to Clients A.

Although Respondent stated he was always fully prepared to return the money to the clients as soon as they requested it, the State Bar produced records of Respondent's trust account during the period that Respondent was holding the money of Clients A. The available records from 1984 to 1990 indicate that, for nearly every month in that period, the balance was far below $4,517. This can only mean that the clients' money was being used for other purposes, was not being segregated, and/or was not being accounted for. Respondent has indicated that there were other trust accounts, but he was unable to locate those records due to the confusion that resulted from several moves of his law offices.

### Discussion of Decision

The State Bar alleged that Respondent violated ER 1.4, in that he failed to adequately communicate with his clients, failed to respond to their requests for information, and failed to explain matters to the clients, despite their repeated requests. The Committee found that Respondent did not violate ER 1.4. The Commission agrees with the Committee.

Respondent's explanation for not communicating with his clients for the six-year period from 1984 until 1990 is that he was distracted with other matters. While the Commission does not encourage such a situation, it notes that the clients were aware that Respondent was holding the $4,517 for them for that period. Their instructions to Respondent were to hold the money until they requested it. They were difficult clients who were difficult to contact, be it by mail, telephone, or in person. The Commission agrees with the Committee that it would have been more professional for Respondent to send periodic reports of the funds to Clients A along with inquiries as to how he should proceed. However, given the circumstances, Respondent's failure to communicate does not rise to an ethical violation.

The State Bar also alleged that Respondent violated ER 1.15(b), failure to promptly deliver a client's funds; and Rule 44(a), failure to deposit a client's funds into the trust account. The Commission notes that ER 1.15(b) states that a lawyer must immediately remit a client's funds "... except as otherwise permitted by agreement

---

**3.** There were no allegations by the State Bar that this action by Respondent was improper. Therefore, the Commission will not address this issue.

**4.** Although, there was some dispute in the testimony at the hearing over whether Respondent actually sent this letter, the Committee ultimately found that Respondent did send the letter.

with the client ..." In this matter, the clients specifically instructed Respondent to hold their money for an indefinite period of time. In addition, Respondent did initially deposit the funds into his trust account. The Commission and the Committee find that Respondent did not violate ER 1.15(b) or Rule 44(a).

The Commission and the Committee find that Respondent violated ER 1.15(a), in that he failed to keep the clients' money separate from his own property, used their money for other purposes, and failed to keep adequate records to show what, in fact, he did with the money. This violation is evidenced by the fact that his trust account records regularly showed a balance significantly lower than $4,517.

Respondent's failure to maintain complete records of his clients' funds is also in violation of Rule 44(b)(3).

Based on the above-stated facts and violations, the Hearing Committee recommended that Respondent be informally reprimanded. Recommendations of the Hearing Committee are entitled to deference and serious consideration. *In re Pappas,* 159 Ariz. 516, 768 P.2d 1161 (1988). The Commission accepts the Committee's conclusions as to what the facts actually were in this matter. The Commission also concurs with the Committee's findings of ethical violations. However, the majority of the Commission believes Respondent's misconduct warrants a sanction more severe than an informal reprimand. Trust fund violations are among the most serious ethical breaches a lawyer can make.

In determining the appropriate sanction, the Commission follows the Court's lead by looking for guidance in the American Bar Association's *Standards for Imposing Lawyer Sanctions. See In re Rivkind,* 164 Ariz. 154, 791 P.2d 1037 (1990); *In re Tarletz,* 163 Ariz. 548, 789 P.2d 1049 (1990); *In re Spear,* 160 Ariz. 545, 774 P.2d 1335 (1989).

Standard 4.1 addresses failure to preserve a client's property. Standard 4.12 provides for suspension when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client. Respondent negligently failed to keep the funds of Clients A in his trust account. Although, apparently, Respondent did not have the intent to misappropriate the clients' funds, Respondent had an obligation to hold those funds in his trust account. A review of all the trust account records available indicates that he did not do so. The commentary to Standard 4.12 states that suspension is appropriate "for lawyers who engage in misconduct that does not amount to misappropriation or conversion. The most common cases involve lawyers who commingle client funds ·with their own ..."

Although the clients were not injured in this instance, the potential for injury was great. The funds were not kept in Respondent's trust fund. Therefore, the clients' funds were subject to Respondent's creditors, creating the possibility that Respondent, at some point, might not have been able to pay Clients A.

In arriving at the recommended sanction, the Committee considered factors in mitigation, as listed in Standard 9.32. It found that Respondent has no prior disciplinary record and had no dishonest or selfish motive. The Committee also considered the unique circumstances of the case in concluding that Respondent should receive only an informal reprimand; Respondent has never denied that he owed Clients A the $4,517 or that he was holding it for them until they requested it.

The Commission considered those same extenuating circumstances and mitigating factors. The Commission also notes that Respondent made several attempts to return the clients' money when requested, he was dealing with very difficult clients, and his clients waited six years to request their money. However, the majority of the Commission disagrees with the Committee as to the ultimate sanction. Were it not for those factors, the Commission would be recommending a lengthy suspension or possibly disbarment. Respondent took money out of his trust account and failed to main-

tain trust account records. The public must be assured that funds held in a lawyer's trust fund are inviolable. Removal of those funds by a lawyer, regardless of intent, cannot be regarded lightly. The mitigation present here does indicate that a lesser sanction than disbarment or lengthy suspension is in order; however, an informal reprimand for a trust fund violation is not appropriate. Rather, the majority of the Commission believes a short-term suspension is appropriate.

The Commission notes that the purpose of lawyer discipline is to protect the public, the profession, and the justice system. *In re Neville,* 147 Ariz. 106, 708 P.2d 1297 (1985). The majority believes that to impose any sanction less than a suspension would not fulfill that purpose. Although the Court has rarely imposed suspensions for such a short period as thirty days, the majority of the Commission believes the unique factors present here make this case that rare exception. The majority believes a thirty-day suspension combined with a two-year period of probation, with terms crafted specifically to prevent this kind of conduct from recurring, is appropriate in this matter.

### Dissenters' Comments

Commissioners Doyle and Malm dissent from the majority. Both Commissioners agree, in general, with the majority, but believe that a thirty-day suspension is too harsh. The majority found that the unique circumstances and numerous mitigating factors present warrant a decrease in the length of suspension to thirty days. Commissioners Doyle and Malm, however, believe the mitigation to be so strong as to warrant some sanction less severe than suspension. However, both agree that, were it not for these extenuating circumstances, this matter would be serious enough to warrant disbarment.

RESPECTFULLY SUBMITTED this 5th day of March, 1993.

/s/ Raymond W. Brown
Raymond W. Brown, Chair
Disciplinary Commission