884 P.2d 1094

**In the Matter of a Member of the State Bar of Arizona, Thomas Edward HIGGINS, Jr., Respondent.**

No. SB–92–0051–D.
Disc. Comm. Nos. 88–1885, 89–1460, 89–1998, 89–2069 and 90–0597.

Supreme Court of Arizona,
In Division.

Sept. 29, 1994.

Slutes, Sakrison, Even, Grant and Pelander, P.C. by Tom Slutes, Tucson, for respondent.

Yigael M. Cohen, Phoenix, for State Bar.

## OPINION

ZLAKET, Justice.

The disciplinary commission has recommended that respondent be retroactively suspended for ethical violations relating to three clients and for his failure to cooperate with the state bar's investigation into these and two other matters. The hearing committee suggested only probation. Both respondent and the bar have appealed. We have appropriate jurisdiction. *See* Rule 53(e), Ariz. R.Sup.Ct.

 In disciplinary cases, this court is the final arbiter of both fact and law. *In re Neville*, 147 Ariz. 106, 108, 708 P.2d 1297, 1299 (1985). Because significant differences exist between the findings of the hearing committee and those of the commission, we observe at the outset that ethical violations must be established by clear and convincing evidence. *In re Lincoln*, 165 Ariz. 233, 235, 798 P.2d 371, 373 (1990).

## COUNTS I & II

In March 1987, "Mr. S" retained respondent to reclaim cameras, video equipment, and related supplies that had been seized by the Avondale police. Respondent successfully recovered the property and transported it to Tucson for storage until the client or his family could pick it up. He kept everything in a locker except for the electronic equipment, which he took home to keep clean. Respondent admits that he plugged in the video cassette recorder (VCR) and attempted to use it. He says that when the unit did not work, he gave it to his son to "fix." Respondent also claims to have sent Mr. S a letter advising that he intended to use the VCR in the absence of any objection. Although it is not clear from the record whether Mr. S received the letter, he denied ever having given respondent permission to use the equipment.

In October 1988, while Mr. S was in prison, his stepfather drove to Tucson to pick up the property. After several unsuccessful attempts to reach respondent, the stepfather was able to arrange a 5:00 p.m. meeting at

the storage locker. Respondent also agreed to bring the unused portion of his retainer fee to the meeting. At 5:20, respondent's secretary arrived and told the stepfather that her employer was ill and could not find the locker key. She promised, however, that respondent would immediately return the belongings by mail.[1] She claimed to know nothing about any refund.

The next day, the stepfather contacted the police, who arranged for him to call respondent at noon. When he did, respondent's secretary indicated that a legal assistant would meet him at the locker. He was then given everything except the VCR, other video equipment, and the refund. When the stepfather noticed the missing property, he returned to the law office. Respondent's secretary promptly agreed to have it for him the following day. She delivered the goods and the refund as promised. Upon later inspecting the video equipment, the stepfather found it to be damaged. He also discovered that one of the videotapes contained footage of respondent's son.

During the course of his representation, Mr. S paid respondent nearly $3000, of which only $500 was refunded. Mr. S complained that he never received a complete accounting. Respondent testified, however, that he sent several billing statements, copies of which are contained in the record. The hearing committee found that, although respondent's records left something to be desired, the state bar failed to prove by clear and convincing evidence that no accounting was made. The disciplinary commission disagreed and found a violation of ER 1.5 (relating to lawyers' fees).

The state bar also alleged that respondent had not adequately communicated with Mr. S, who testified that the lawyer failed to answer letters and phone calls over an eight-month period. Respondent insisted that he did speak to Mr. S during that time, but could not state with particularity the extent of his communications. Again, the hearing committee found insufficient evidence of respondent's failure to communicate, while the

---

1. According to respondent's own calculations, the property would have filled five or six large bags and weighed several hundred pounds, making its mailing somewhat impractical.

commission found that he violated ER 1.4 (relating to client communications).

■ The foregoing issues are fact-intensive. Because their resolution involves, at least in part, the weighing of conflicting testimony and other evidence, we are inclined to defer to the findings of the hearing committee. *In re Spear*, 160 Ariz. 545, 551, 774 P.2d 1335, 1341 (1989) (deference proper on issues of credibility). It simply is not possible to resolve these disputed questions based on the record before us. We thus conclude that the bar has not established the foregoing violations by clear and convincing evidence.[2]

We reach an opposite conclusion with respect to the allegation that respondent violated ER 1.15(a) (lawyer shall keep client's property separate from his or her own and shall appropriately safeguard it). The record supports both the committee's and the commission's findings that respondent used Mr. S's property without permission, failed to keep it separate from his own, and returned it in a damaged condition. Although the cause of damage is not clear, we agree that respondent's overall handling of the property was improper.

Finally, the state bar alleges a breach of ER 1.16(d) (on termination of representation, a lawyer shall take reasonable steps to protect client's interests). The hearing committee found no violation here. The commission did, but failed to set forth a specific basis for it. We are unable to discern from the record a clear and convincing showing of any such breach.

## COUNT III

During 1988 and 1989, respondent represented "Ms. D" in a divorce proceeding. Following an October 1988 hearing, the trial court issued a minute entry directing respondent to prepare and file a form of dissolution decree. When he failed to do so, opposing counsel submitted a draft that materially differed from the minute entry in ways detrimental to Ms. D. Respondent did not object, and the court signed the proposed decree in March 1989.

■ On July 31, respondent filed a motion to set aside the decree, arguing that it contained provisions neither ordered by the court nor agreed upon by the parties. The court denied the motion on timeliness grounds, noting that it was not filed until four months after entry of the decree. The court of appeals affirmed. Both the committee and commission found respondent's handling of this matter inexcusable. We agree and conclude that he violated ER 1.1 (competence) and ER 1.3 (diligence).

In August 1989, respondent filed an ex parte motion requesting disbursement of $1500 from an escrow account for Ms. D and her ex-husband. This account contained proceeds from the sale of their house. The motion alleged that Ms. D wished to pay fees to respondent but lacked funds to do so. It further claimed that opposing counsel did not object to the disbursement even though he had not communicated with his client, Mr. D. The court granted the motion.

■ Neither Mr. D nor his attorney had received a copy of the motion. Upon learning of it, they moved for an order directing the funds to be returned. They claimed that Mr. D's counsel had not agreed to the disbursement, but rather had said only that he needed to check with his client. The court granted the motion. Although we cannot tell whether respondent was otherwise entitled to the $1500, he never complied with the court's order by returning the money. The committee and commission both found that respondent's motion was filed without the full knowledge and consent of the adverse party. We agree that he therefore violated ER 3.3(d) (lawyer shall inform tribunal of all material facts in ex parte proceeding).

The commission settled on several other violations not found by the hearing committee. It concluded, for example, that respondent violated Rule 43, Ariz.R.Sup.Ct. (relat-

---

2. Even if, as counsel contends, the commission's findings regarding ER 1.4 related to respondent's interactions (or lack of them) with Mr. S's stepfather, the result is the same. The record does not permit us to make such a determination by clear and convincing proof. Furthermore, since the commission did not explicitly indicate that this was its basis, we are hesitant to infer as much, particularly where neither it nor the committee made any specific findings in this regard.

ing to client trust accounts). This appears to have been based on the issuance to Mr. D of a trust account check that allegedly was not covered by sufficient funds. Both the commission and the committee, however, determined that the matter was cleared up within several hours. There were no additional findings made. We are therefore unable to conclude that there was a breach of this rule.

Other violations found by the commission include ER 3.2 (lawyer shall make reasonable efforts to expedite litigation), ER 4.1 (lawyer shall not knowingly make a false statement of material fact while representing a client), and ER 8.4 (professional misconduct). We agree with the commission that respondent violated ER 3.2 in the way he handled Ms. D's dissolution decree. We also agree that he breached ER 4.1 when he misrepresented to the court that opposing counsel had approved the ex parte motion.

With respect to ER 8.4,[3] however, it is not clear which of respondent's transgressions, or what specific portion(s) of the rule, the commission found applicable. In any event, as applied here, it is cumulative at best and adds nothing to our analysis of respondent's conduct or the propriety of any sanction.

## COUNT IV

"Mr. P" retained respondent in April 1987 to represent him in a criminal appeal and a related forfeiture action. The following background information appears undisputed, although no evidence was apparently received on the matter.[4] Mr. P entered a guilty plea to four felony counts pursuant to an agreement under which he was to receive a 20–year sentence. He was released pending sentencing, with the understanding that he would be given a 28–year sentence if he thereafter failed to appear. He fled, and was soon reapprehended. The court sentenced him to the longer term. Respondent unsuccessfully appealed on Mr. P's behalf.

We are at a loss to understand the vast discrepancies between the committee's and the commission's findings and conclusions with respect to this count. The record fails to provide any explanation. The hearing committee essentially dismissed the charges as meritless. The commission disagreed. For example, the commission found that respondent violated ER 1.2 (regarding scope of representation) by failing to raise on appeal certain claims specified by Mr. P. Respondent testified, however, that although he and Mr. P discussed a number of issues, the client never directed him to file or raise anything other than what was presented. He stated that Mr. P wanted his sentence reduced, but was unwilling to risk a more severe penalty by attempting to withdraw his plea. Having little else presented, we agree with the committee that there was insufficient evidence of an ethical violation here.

The commission also concluded that respondent breached ER 1.4 (regarding client communication) in two respects. First, it determined that respondent failed to advise Mr. P of options for further review or that his legal representation was at an end. Second, it found that communications with the client had been inadequate throughout the representation. Respondent admits he did not specifically tell Mr. P that the case was over, but states that he sent him a copy of the court of appeals decision. He also testified that he told Mr. P's mother that her son had a potential federal claim. Additionally, the client never asked him to perform further services.

---

**3.** ER 8.4 states:

It is professional misconduct for a lawyer to:
 (a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

 (d) engage in conduct that is prejudicial to the administration of justice;
 (e) state or imply an ability to influence improperly a government agency or official; or
 (f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.
 Rule 42, Ariz.R.Sup.Ct.

**4.** The facts related to this discussion come from the state bar's brief. They appear to have been those relied on by the committee.

With respect to communications during the course of representation, respondent acknowledges that he met with Mr. P only twice and spoke with him perhaps six times, but again asserts that most of his communications were relayed through the mother. Mr. P's mother, however, states that she had difficulty getting in touch with respondent, who she says did not return her phone calls. Although respondent's communication with the client both during and at the end of the representation might have been better, the hearing committee found no violation of ER 1.4. Because this issue turns largely on witness credibility, we again defer to the committee's findings.

■ The commission further found that respondent's fee was excessive and thus violated ER 1.5. The record indicates that respondent received approximately $15,000 for handling the appeal and the forfeiture matter. That amount is not unreasonable on its face, and nothing in the evidence establishes that it was improper here.

■ The commission finally found that respondent failed to diligently represent Mr. P pursuant to ER 1.3. It apparently based this finding on a determination that he relied on an erroneous or incomplete legal standard in support of his client's ineffective assistance of counsel claim, even after the error was pointed out by the state. We agree with the committee that this omission does not rise to the level of an ethical breach.

## FAILURE TO COOPERATE

Both the committee and the commission found that respondent failed to cooperate with the state bar's investigations of these three cases and two other matters in which no violations were found. Respondent concedes the point. We therefore find that he violated ER 8.1(b) (lawyer shall not knowingly fail to respond to lawful demand for information from the bar relating to disciplinary proceedings), as well as Rules 51(h) (failure to furnish information or promptly respond to request from bar counsel) and 51(i) (refusal to cooperate with the state bar), Ariz. R.Sup.Ct.

## DISPOSITION

■ In determining appropriate discipline, we are guided by the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991). Standard 3.0 lists four factors to be considered: (1) the duty violated, (2) the lawyer's mental state, (3) the potential or actual injury caused, and (4) the existence of aggravating or mitigating factors. *See also In re Tarletz,* 163 Ariz. 548, 554, 789 P.2d 1049, 1055 (1990). The hearing committee found that none of respondent's violations, standing alone, calls for serious discipline. It also found no evidence that respondent intentionally committed the infractions in question. Nevertheless, it concluded that these violations collectively warranted a two-year suspension. The committee recommended probation, however, based on the significant mitigating evidence of respondent's prior substance abuse and marital problems, as well as his exemplary behavior and rehabilitation efforts during the interim period.

The commission, on the other hand, felt that a two-year *retroactive* suspension was more appropriate. Its recommendation was apparently based on respondent's three prior informal reprimands for similar behavior. These infractions included failure to communicate, lack of diligence, failure to notify a client of the receipt of property, and failure to abide by a client's decisions concerning the objectives of representation. In considering the earlier breaches, we note that two of them occurred in April and August 1989, around the same time as the matters at issue here. We hesitate to place as much weight on them as the commission did, given the evidence of respondent's substance abuse during this period.

Respondent testified that he was having marital, psychiatric, and substance abuse problems which affected his work. He contends that his alcohol and drug use began as a means of coping with an overloaded work schedule, although he apparently never appeared in court under the influence. In November 1989, respondent checked himself into an alcohol and drug rehabilitation facility, where he stayed for one month. The hearing committee found that respondent is now dealing with his personal problems and

doing his best to avoid misconduct. He regularly sees a psychiatrist and takes medication for a bipolar disorder. He also frequently attends Alcoholics Anonymous meetings, participates in an aftercare program, and is subject to random urine testing. To assist in maintaining a reasonable workload, respondent no longer accepts domestic relations cases and regularly reports to a practice monitor.

Like the committee, we believe these circumstances warrant less of a sanction than we would otherwise be inclined to impose. *See* ABA Standards 9.32(c) and (i)(personal problems, mental disability, and chemical dependency are mitigating factors). The state bar argues that respondent has proven neither the existence of these problems nor that they caused his unethical behavior. It strikes us as somewhat inconsistent, however, for the bar to take this position. It *stipulated* to terms of interim probation that required respondent to see a psychiatrist once a week and submit to alcohol and drug testing twice weekly—effectively admitting that he has had substance abuse and psychological problems which have contributed to his behavior. Furthermore, the evidence relied on by both the committee and the commission consists primarily of respondent's testimony, which the state bar has failed to effectively controvert. Finally, if there really was doubt about the validity of respondent's claims, the bar could and should have sought review of the biweekly psychiatric reports required by the terms of probation to be kept.[5]

 We agree with the hearing committee that respondent's personal problems are mitigating; and, in light of our agreement with it on most of the charges, we find that a continuation of probation is appropriate. We disagree with the commission's five-to-three recommendation of a retroactive suspension. Normally, such a sanction is imposed where an attorney has been on interim suspension, *see In re Rivkin,* 164 Ariz. 154, 791 P.2d 1037 (1990), or has voluntarily removed himself or herself from the practice

of law, *In re Niccolini,* 168 Ariz. 448, 814 P.2d 1385 (1991). Here, however, respondent ceased practicing law for only three months. Although he was given an interim suspension in June 1990, he was placed on probation shortly thereafter pursuant to stipulation. We concur with the dissenting members of the commission that a retroactive suspension makes no sense in these circumstances.

In addition, the record shows satisfactory performance by respondent during his probationary period. We therefore find that probation has thus far protected the public and will likely continue to do so. *See In re Coffey,* 171 Ariz. 544, 546, 832 P.2d 197, 199 (1992) (goal of discipline is to safeguard public, not to punish lawyer).

Respondent is hereby continued on probation for an additional term of two years, upon the conditions that he obtain such psychiatric and substance abuse counseling as is determined to be necessary by his doctors and the state bar; that he participate in the bar's membership assistance program (MAP); that he be monitored and subjected to periodic drug testing as deemed appropriate by the bar; and that he continue his practice of declining representation in domestic relations matters.

Respondent's probation is subject to renewal pursuant to Rule 52(a)(6), Ariz.R.Sup. Ct. He is also ordered to pay all costs associated with these proceedings.

MOELLER, V.C.J., and MARTONE, J., concur.

---

5. Because the issue is not properly before us, we need not reach the state bar's argument that respondent must prove the existence of a mental impairment and causation by clear and convincing evidence.